SAMUEL S. PARKER *versus* JOB N. TUTTLE.

Where the plaintiff took a note on demand, as the agent of the payee, and afterwards purchased it, which was not indorsed to the plaintiff till more than four months after its date, it was held to be dishonored so as to let in any equitable defence to the note.

And if the payer disclosed no defence to the agent when he gave the note, or at the same time promised to pay a portion of it at a time future, he is not thereby estopped to set up an existing defence to the same.

EXCEPTIONS were taken to the rulings of GOODENOW, J., in this action, which is ASSUMPSIT upon a note of hand, dated 15th of November, 1852, for $41.53, payable on demand, with interest, to Charles H. Strickland or order, and by him indorsed.

Plea, the general issue, and brief statement, alleging the note to have been given in part for spirituous and intoxicating liquors, sold in this state in violation of law, &c.

There was evidence tending to show that the note was given in settlement of a balance due said Strickland, and included a barrel of rum; and evidence tending to show that it was sold in this state by Strickland, to the defendant, in violation of law, and also to show that it was not.

The note was given in Smithfield, in this county, and taken by the plaintiff, who then was agent for Strickland, who then and since lived in Boston, Massachusetts, or its immediate vicinity.

The plaintiff's home is Waterville, Maine.

When the note was given the items of the account were not present. The defendant objected to giving the note and stated there were some matters between Strickland and him which he wished to arrange with Strickland. The plaintiff said it should make no difference. He did not disclose to the plaintiff what they were, nor say anything about spirituous or intoxicating liquors.

It did not appear when the note was negotiated to the plaintiff, but there was evidence tending to show that it was more than four months after it was given, and before the writ was made.

It was contended by the defendant, that if the note was given in part for spirituous or intoxicating liquors, sold in this state in violation of law, it was absolutely void.

Also, that after the lapse of more than four months from its date, the note was dishonored, and so the proposed defence, as to its consideration, available against the holder of the note.

The court instructed the jury that the note was not absolutely void, but would be collectable in the hands of the present holder, if he held it *bona fide*, for a valuable consideration, and without notice that it was given in part for an illegal consideration. But that if he was a mere nominal party, prosecuting the action in his own name, for the benefit of Strickland, the defence, if proved, would be available.

The court also instructed the jury, that the note would not be dishonored necessarily by reason of the lapse of more than four months from its date, because, if it was given to and received by the plaintiff, acting as agent of Strickland, and no such defence as is now set up was then disclosed, and, if they believe the testimony, the defendant promised when he gave the note, and as he was leaving the store when it was given, that he would send him the first ten dollar bill he should get, they might find it was not a dishonored note when received by the plaintiff as his own.

The verdict was for the plaintiff.

Parker *v*. Tuttle.

*John S. Abbott*, counsel for the defendant, argued in support of the exceptions.

The instruction that the " note would be collectable in the hands of the present holder, if he held it *bona fide*, for a valuable consideration, and without notice that it was given in part for an illegal consideration," is seriously objected to.

This instruction—especially in connection with the succeeding three lines—wholly ignores " *implied*" notice, which the statute makes provision for, and can be understood in no other sense, than as requiring of the defendant to prove that the plaintiff had *actual knowledge*—" *expressed*," not " *implied*," notice of the illegality of the consideration.

It is believed that this instruction is clearly erroneous.

It has been too often decided, to require citings of authorities, that whoever purchases a dishonored note from the payee, is deemed to have *implied* notice of every defence which would have been available, if the note had been sued by the payee. *Tucker* v. *Smith*, 4 Maine R., 415; *Ayer* v. *Hutchins*, 4 Mass. R., 372; *Thurston* v. *McKoren*, 6 Mass. R., 428.

The books are full of cases sustaining this position. It would be pedantic to cite them.

Intimately connected with this, is the erroneous ruling of the court, that this note was not dishonored after it had been overdue " more than four months."

It will be borne in mind, that the defendant lived in Smithfield, Somerset county, when the note was given; that Strickland, the payee of the note, resided in Boston or its vicinity when the note was given, and has resided there ever since—*one day's journey from Smithfield;* that the plaintiff then and ever since has resided in Waterville.

The note was payable on demand—was due the instant it was given, and under the above facts and circumstances, the jury are instructed that the note was not dishonored, though overdue when sold, more than four months. *Thompson* v. *Hale*, 6 Pick. R., 258; *Sylvester* v. *Crapo*, 15 Pick. R., 92;

Bayley on Bills, 2 Am. ed., 135 and 137, and cases cited in notes.

In *Stevens* v. *Bruce*, 21 Pick. R., 193, the note was dated 9th of April, 1831, payable on demand; held to have been dishonored, being shown not to have been indorsed prior to 30th of July, 1831. *Three months and twenty-one days.*

Other cases might be readily cited, but it is believed that there can be no doubt that the note in this case was dishonored after "the lapse of more than four months from its date."

The reasons given for the ruling, that the note was not dishonored after such lapse of time, are quite unsatisfactory, and, it is contended, they are utterly unsound.

First. That the defendant did not set up such defence when the note was given. Such omission would not preclude his setting it up, if the note had been given to Strickland, instead of the agent of Strickland; neither can it preclude him now.

Besides, the defendant said all he could reasonably be required to say, when he objected to giving the note—stating, "there were some matters between Strickland and him which he wished to arrange with Strickland."

And he did not give the note, till the plaintiff assured him that "it should make no difference." After obtaining the note upon this assurance, it is submitted that it is not only legal, but manifestly just and right, that there "should be no difference." That the defendant should stand in the same position as if the action had been in Strickland's name.

The second reason, for the ruling is, that "the defendant promised when he gave the note, and as he was leaving the store where it was given, that he would send him the first ten dollar bill he should get."

The plaintiff was then acting as the agent of Strickland, and a promise to him was a promise to Strickland.

It is not perceived that a *verbal* promise, without consideration, made at the same time the note was given, to pay

$10.00 of the $41.53, can have any more effect in excluding the defence, than the *written* promise, in the note itself, to pay the whole of the $41.53.

*J. H. Webster*, counsel for the plaintiff.

On November 15, 1852, when the note in suit was given, the statute of 1851, ch. 211, and also the thirteen sections from 10 to 22 inclusive, of chapter 205, of the acts of 1846, were in force. See acts of 1851, ch. 211, s. 18.

The first ruling complained of was, "that the note was not absolutely void, but would be collectable in the hands of the present holder, if he held it *bona fide*, for a valuable consideration, and without notice that it was given in part for an illegal consideration." This instruction is almost in the precise language of the proviso of section 10, chapter 205, of the statute of 1846. The only difference is, the proviso of that section affects the indorsee by implied notice of the illegality of consideration, whereas, in the instruction nothing is said specifically about implied notice. But what did the judge mean by the word notice? Did he not mean to use the term in its technical sense? If he used it in its technical sense, it included not only actual but implied or constructive notice. When a deed is properly recorded, it is notice to all the world of the conveyance, although there may not be ten men in the state who know actually anything about it. So also when a note is overdue, that fact is notice to every person disposed to become a party to it, that there is a defence. The consequences of actual and implied notice are precisely alike, and they are constantly treated and spoken of by jurists in the same manner. It affords no reason for holding the presiding judge to be ignorant, and to use words without a meaning, because very wise legislators in 1846 imagined a distinction, where none really existed.

But what is implied notice " of the illegality of the consideration?" It is any circumstance attending the note or its negotiation, that should put the party upon inquiry, to

ascertain its consideration or taint, if any. A party purchasing a note without inquiry, under such circumstances, cannot complain if he finds it unavailable.

If a note overdue for a year, if you please, be offered to me, and I inquire of the payer if there is a defence, and am told by him there is none, and after that purchase the note, have I any notice, either actual or implied, of any illegality or taint in the inception of the note? Can the maker, after that declaration, set up in my hands any defence against the note, that he could not set up had I purchased the note the day it was made? *Holbrook et al.* v. *Burt et al.*, 22 Pick. R., 546.

Does it make any difference whether the statement is made at the time of the negotiation or of the making of the note? In one case he induces the indorsee by his own declarations, made when he knows of the pendency of a negotiation to obtain said note, to part with his money for it; he is, therefore, estopped to deny the validity of the note. In the other case, at the time of the inception of the note, knowing all its faults or taints, he states to a third person that it will be paid, and gives no intimation of any defence. That third person afterwards becomes the indorsee of the note. He becomes so, relying on the statements of the payer. Shall the payer, if he knew of the taint at the making of the note, be allowed to set up such defence against one who had bought it, relying on the defendant's own declarations? It is to be hoped that the law is subject to no such reproach. The plaintiff was agent for the payee of the note, made the settlement with the defendant, and took it for the payee. The defendant did not set up or name to the plaintiff then, any ground of defence now set up, although, if such ground of defence existed, he knew it then. He promised to send the first ten dollar bill that he got. Induced by that representation, the plaintiff purchased the note, and parted with his money. It is inequitable to allow him to set up this defence. There was, therefore, nothing in the appearance of the note or the mode of its ne-

gotiation, that could imply notice to the plaintiff of any taint in its inception; but everything to contradict it, and show it to be honest and *bona fide.* The case, therefore, did not require instruction as to the effect of implied notice, and the court cannot be required to give instruction on hypothetical cases. The first instruction, therefore, given by the court was all the defendant had a right to ask, and it was unobjectionable. Chitty on Bills, edition of 1833, 246, 247.

The second instruction given by the judge, and excepted to by the defendant, seems to be so entirely for the defendant, that I cannot for a moment believe he intends to push it to the consideration of the court.

The foregoing reasoning would seem to be conclusive as to the last ruling complained of. The language used may not be exactly precise and accurate, but the idea conveyed by it to the jury undoubtedly was this: The plaintiff was the agent of Strickland. As such he received the note. The defendant then disclosed no such defence as is now set up. He promised to send the plaintiff the first ten dollar bill he should get; and the jury, if they believed this, might find that the defendant, by his representations, had induced the plaintiff to buy the note, and thus part with his property, and therefore would be estopped to deny the legality of the consideration. If such be the meaning of this instruction, and it is difficult to give it any other meaning, I am unable to see wherein it is wrong.

All the above is predicated upon the supposition, that the plaintiff did not know what was the consideration of the note. If he did know the consideration at the time it was taken, it is of no consequence whether the note was overdue at its negotiation or not. As to the plaintiff it was dishonored, if tainted at its inception. The rulings requested and given were unnecessary and useless—had no application to the case. For wrong instructions, which by no possibility could affect the case, the court will not set aside the verdict.

The instruction requested, as an abstract proposition,

might perhaps be right, but it had no application to the case.

The plaintiff was the agent of Strickland, the payee of the note, in settling with Tuttle. He had Strickland's account with him, although not the items. He knew all about the consideration of the note. If Strickland had indorsed the note to him, the next minute after it was given, the defendant could have set up all the defence that he could in Strickland's hands. Every defence that could be set up in Strickland's hands was attempted to be proved, and proof allowed, and the jury have found for the plaintiff, thereby negativing the defendant's allegation, that the consideration was illegal. The plaintiff knowing all the consideration of the note, it was of no consequence when it was negotiated. The court will not send this case for a third time to a jury, to correct a ruling of no consequence in the case.

*Abbott,* in reply:

In regard to the circumstances attending the giving of the note, it will be remembered that the plaintiff was acting as the agent of Strickland, and may well be presumed to have known the subject matter of the accounts settled, especially might the defendant so presume. There was no more occasion for his telling the *agent* at the time, than there would have been for his telling Strickland what the law was, and that he could legally defend and avoid the payment of the note.

There was no intimation at the time, that the plaintiff intended to purchase the note; and there is no foundation for the argument, that the defendant induced the plaintiff to purchase the note, by telling him he would send the first ten dollar bill he should get.

The counsel admits that the note was dishonored, and that the instruction that it was not, is erroneous, but contends that it is immaterial.

I need not reiterate what I have said, and what has been so often decided, that the purchaser of a dishonored note can be in no better position than the payee.

Parker *v.* Tuttle.

MAY, J. The note in suit was payable on demand, and not indorsed to the plaintiff until more than four months from its date had elapsed. When it was made it was taken by the plaintiff, as the agent of the payee, who then resided in the city of Boston or its vicinity. The defendant was a resident of Smithfield, in this state.

One of the principal questions which arose at the trial was, whether the note was dishonored at the time of its indorsement, so as to let in all the equitable and legal defences existing between the original parties. The presiding judge instructed the jury, that the note would not be dishonored necessarily by reason of such lapse of time before it was indorsed. In view of the authorities cited by the defendant's counsel, and under the circumstances of this case, we are of opinion that the plaintiff, if he did not already know by reason of his connection with the note, and its inception, ought to have been admonished by the length of time which had then elapsed, that some legal or equitable cause existed why it had not been paid. Much shorter periods of time have been held to work the dishonor of similar notes, while no case has been found where so long a period has not been held to produce such effect.

Nor do we think the fact that no ground of defence or intimation of any, was stated to the plaintiff's agent when he took the note, or that a simultaneous promise to pay a part of the note to the payee or his agent as soon as the means could be obtained, the defendant then having no reason to suspect that such agent would become the purchaser or indorsee of the note, takes the case out of the ordinary rule, or in any manner estops the defendant from setting up any existing defence.

The instruction which has been considered being erroneous, it becomes unnecessary to examine into the propriety of the other instructions given, or to consider the correctness of those which were requested and withheld.

*Exceptions sustained,*
*verdict set aside, and new trial granted.*