AMBROSE LA DUE *vs.* FIRST NATIONAL BANK OF KASSON.

July 12, 1883.

**Negotiable Instruments—Indorsee after Maturity—Defences at Common Law.**—According to the commercial law, the rule formerly was that an indorsee of an overdue bill of exchange or negotiable promissory note took it subject only to such equities or defences as attached to the bill or note itself, and not to offsets or other claims arising out of collateral matters or independent transactions against the payee or an intermediate holder.

**Same—Statutory Defences.**—But by statute (Gen. St. 1878, *c.* 65, § 40, and *c.* 66, § 27,) an overdue note or bill is put upon the same footing as any other chose in action, and, if assigned after due, a set-off to the amount of the note or bill may be made of any demand existing against any person who has assigned or transferred such note or bill after it became due, if the demand is such as might have been set off against the assignor while the note or bill belonged to him.

**Same — Bill payable on Demand held dishonored by mere Lapse of Time, and Subject to Set-Offs, etc.**—If a bill of exchange, payable on demand, has been outstanding an unusual and unreasonable length of time, it may be deemed overdue and dishonored, so as to render it subject, in the hands of a subsequent assignee, to any equities or defences which the drawer had against it in the hands of the assignor, although it may never have been in fact presented to the drawee for payment, and hence not due as to the drawer. The point of inquiry in determining whether such assignee took it subject to such equities and defences as overdue paper is not whether it had been presented for payment and dishonored in fact, but whether it had been outstanding so unusual a length of time as to put him upon inquiry, and charge him with notice of these defences against it in the hands of his assignor.

**Same—Demand Bank Draft outstanding 4 months — Subsequent Assignment—Defences.**—In this case, *held*, that the fact that a draft, pay-

v.31—3

able on demand, drawn by a bank in this state on a bank in the city of New York, was still outstanding four months and twenty-three days after its issue, was sufficient to justify the trial court in holding that a subsequent assignee took it as overdue and dishonored paper, subject to any set-offs which the drawer held against it while in the hands of the assignor.

Appeal by plaintiff from an order of the district court for Dodge county, refusing a new trial, after a trial by *Buckham, J.*, a jury being waived. The case is stated in the opinion.

*Jones & Gove*, for appellant.

The draft or bill of exchange involved in this case is in effect a cheque, (Redfield's Lead. Cas. on Notes, 718; *First Nat. Bank* v. *Coates*, 8 Fed. Rep. 540; *Foster* v. *Paulk*, 41 Me. 425; *Cruger* v. *Armstrong*, 3 John. Cas. 5,) and as such is an appropriation, by the drawer, of funds in the hands of the drawee, to the amount of the cheque, for the benefit of the holder of it, and by its delivery the drawer admits his liability for its face. Morse on Banks, 258, 284, 286; 2 Parsons on Notes and Bills, 59, 74 and note; 2 Daniel on Neg. Inst. § 1635; Redfield's Lead. Cas. on Notes, 716; *Emery* v. *Hobson*, 63 Me. 32; *Lester* v. *Given*, 8 Bush, 357; *Murray* v. *Judah*, 6 Cow. 484; *Mohawk Bank* v. *Broderick*, 10 Wend. 304; *Gough* v. *Staats*, 13 Wend. 549; *Harper* v. *Anderson*, 21 Wend. 372; *Chapman* v. *White*, 6 N. Y. 412, 417; *Espy* v. *Bank of Cincinnati*, 18 Wall. 620; *Sherman* v. *Comstock*, 2 McLean, 19.

The draft in question is negotiable, and should be presented and payment demanded. Addison on Contracts, §§ 1275, 1276. If not presented within a reasonable time, the drawer will be discharged, if, by reason of the lapse of time, an injury has resulted to him, but not otherwise, and then only to the extent of the injury. 3 Kent, Com. 88, 104; Chalmers' Digest, 258; 1 Parsons on Notes and Bills, 218, 271; 2 Daniel on Neg. Inst. § 1586; Redfield's Lead. Cas. on Notes, 716; *Murray* v. *Judah*, 6 Cow. 484; *Little* v. *Phenix Bank*, 2 Hill, 425; *Mohawk Bank* v. *Broderick*, 10 Wend. 304; *Conroy* v. *Warren*, 3 John. Cas. 259; *Morrison* v. *Bailey*, 5 Ohio St. 13; *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 647.

In the present case no injury has been done to the drawer by a

failure to present the draft sooner. The fact that the drawer has, after the making of the draft or cheque and before its presentment, acquired a demand against an indorsee, is not an injury resulting from the lapse of time. The payee (the plaintiff) paid $500 to the drawer (the defendant), and, in return, the drawer gave to the payee the draft or cheque, the same being an appropriation, for the benefit of the payee, of the sum of $500, belonging to the drawer in New York. There being no unreasonable delay whereby the drawer has been injured, he is liable to the payee for the amount of the draft for the full time of the statute of limitations. *Bell* v. *Alexander*, 21 Gratt. 1; *Fletcher* v. *Pierson*, 69 Ind. 281; and authorities cited *supra*.

It is argued that, the draft being stale or dishonored presumptively, a holder, acquiring it after such delay, takes it subject to the state of accounts and counter-claims and equitable defences as between the drawer and payee and each subsequent holder, to the same extent as if it were an overdue note. The fallacy is found in the assumption that this draft or cheque is overdue in the sense that a note after maturity is overdue. The law is not that the lapse of time makes a cheque overdue or stale, or even dishonored in any sense. If payment is not demanded in due course, each indorser takes it subject merely to this risk, as between him and the drawer, viz.: Has the delay caused an injury to the drawer?

*Chas. C. Willson*, for respondent.

MITCHELL, J. At Kasson, Minnesota, on the 15th of October, 1881, the defendant drew its draft or bill of exchange for $500 on the Ninth National Bank of New York, payable on demand, to the order of plaintiff, and, for value, delivered the same to the payee, who, on the same day, indorsed it to one Edison, who held it until the 8th of March, 1882, without presentation for payment, and, on the day last named, indorsed it to one Jordan, who, on the 11th of the same month, indorsed it to the Exchange Bank of Louisiana, Missouri, which caused it to be presented for payment on the 15th of the month, when payment was refused, and the draft protested. On the 4th of April, the Exchange Bank transferred it to plaintiff. No explanation is given why Edison held the draft so long without presenting it for payment, nor does it appear that either Jordan or any

of the subsequent indorsees asked for any explanation of this fact when they purchased it. In October, 1881, immediately after the draft in question had been transferred to him, Edison absconded from the state; leaving debts unpaid, among which was a promissory note for $500 and interest, dated September 26, 1881, payable in 30 days to the order of defendant bank, and which it then held and still holds, and which has never been paid. About the first of November, 1881, the defendant, having ascertained that Edison was the owner of the draft in question, notified the drawee not to pay it. This last fact is, perhaps, not material. Upon being sued upon the draft, the defendant now seeks to set off against it the promissory note against Edison already referred to, and the only question in the case is whether, under the facts stated, this can be done. It may be here remarked that La Due, the payee, was clearly discharged from liability as indorser, by the delay of five months in presenting the draft for payment; hence, he can claim no rights as an indorser who has been compelled to pay. His purchase of the draft from the Exchange Bank was a purely voluntary act, and he has now no greater rights under it than if he had never before been a party to the instrument.

According to the commercial law in England, and in probably all those states where a different rule has not been fixed by statute, an indorsee of an overdue bill or negotiable note takes it subject only to such equities or defences as attached to the bill or note itself, and not to claims arising out of collateral matters or independent transactions, whether they arose against the payee or an intermediate holder; the idea being that such commercial paper, although overdue, did not lose its negotiability. Our state, following the example of many others, has by statute entirely changed this rule. Gen. St. 1878, c. 66, § 27, provides: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defence existing at the time of, or before notice of, the assignment; but this section does not apply to a negotiable promissory note or bill of exchange, transferred in good faith and upon good consideration before due." The effect of this statute, clearly, is to place an overdue bill or note upon the same footing as any other chose in ac-

tion, and, if it be assigned after due, a set-off to the amount of the note or draft may be made of any demand existing against any person who has assigned or transferred such note or bill after it became due, if the demand is such as might have been set off against the assignor while the note or bill belonged to him. A set-off arising out of an independent transaction against an intermediate holder is thus placed upon the same footing as an equity attaching to the bill or note itself against the original payee. This same rule is laid down, in somewhat different language, in the provision regarding set-off in justice's court. Gen. St. 1878, c. 65, § 40. To illustrate, suppose Edison had been the payee, and had obtained the draft by fraud and without consideration, or had received payment on it while he owned it, but by oversight or mistake it remained in his hands. These would have been defences attached to the draft itself, as between the original parties, and, if the draft was overdue when Edison indorsed it to Jordan, defendant could have set them up even under the former rule against the draft in the hands of Jordan, or those to whom he subsequently transferred it. But now, under the statute, defendant could set off this note, although it arises out of an independent matter, against an intermediate holder, because it is a demand which might have been set off against Edison while the draft belonged to him, had he sued on it. *Linn* v. *Rugg,* 19 Minn. 145, (181;) *Martin* v. *Pillsbury,* 23 Minn. 175; *Harris* v. *Burwell,* 65 N. C. 584.

Such a rule may render precarious the business of dealing in overdue paper, especially when it has passed after maturity through the hands of several holders. The policy of such a law is exclusively for the legislature, but we may suggest that we see no reason why overdue commercial paper should not be placed on the same footing as any other chose in action. Notes and bills of exchange are only treated as business paper when negotiated before maturity. When overdue they are dishonored. In the principal commercial states of the Union, such as New York, this same rule has long been established by statute. Hence, our state cannot be charged with having adopted a rule in opposition to the judgment or usages of the business world.

The only question left, then, is whether this draft was "overdue" when Edison indorsed it to Jordan on the 8th of March, 1882, four months and twenty-three days after its date.

In the case of a bill, note, or check, payable on demand, no exact day of payment is fixed in the instrument. The general rule is that it must be presented for payment within a reasonable time, having in view ordinary business usages, and the purposes which paper of that class is intended to subserve.

The term "overdue," as applied to a demand bill of exchange, is used in different connections, in each of which it has a different meaning; and the failure to keep these distinctions in mind has perhaps led to some misapprehension regarding the present case. Sometimes it is used in reference to a right of action against a drawer or indorser. In that connection a bill is not overdue until presented to the drawee for payment, and payment refused. Sometimes the term is used in considering whether an indorser has been released by a failure of the holder to present the bill for payment, and to give the indorser notice of its dishonor within a reasonable time. Again, the term is applied to a bill which has come into the hands of an indorser so long after its issue as to charge him with notice of its dishonor, and thus subject it in his hands to the defences which the drawer had against it in the hands of the assignor. It is in this last connection that the term "overdue" is considered in the present case. That in this case a bill may be said to be overdue, although it has never been in fact presented to the drawee for payment, is recognized everywhere throughout the books, and will be apparent, we think, on a moment's reflection. Suppose a draft has been held by the payee five years, without ever having been presented to the drawee for payment, and is then indorsed to another party. It would not be due so as to give a right of action against the drawer, because his contract is only to pay in case it is not paid by the drawee on presentation. But there would be no doubt that it would be overdue or dishonored, so as to charge it in the hands of the indorsee with any defences which the drawer had against it in the hands of the payee, although, when he took it, it had never been presented for payment. The retention of

a demand draft so long a time without presentment, when no defence exists against it, is so unusual and contrary to business usages that this circumstance would be held to charge the indorsee with notice when he purchased the draft that it was dishonored. The lapse of time would in such case be so great as to put a purchaser upon inquiry as to the reason why it was still outstanding and unpaid.

The cases are almost innumerable in which it has been held that paper payable on demand had been outstanding so long when transferred, as to be deemed overdue and dishonored, so as to subject it, in the hands of the purchaser, to any defences which the maker or drawer had against it in the hands of the payee ; and in none of these cases is the question whether or not the paper had been, before the transfer, presented for payment to the maker or drawee, referred to as at all material.   *Down* v. *Halling*, 4 B. & C. 330; *First Nat. Bank* v. *Needham*, 29 Iowa, 249; *Cowing* v. *Altman*, 71 N. Y. 435; *Sylvester* v. *Crapo*, 15 Pick. 92; *Ranger* v. *Carey*, 1 Met. 369; *Herrick* v. *Wolverton*, 41 N. Y. 581; Story on Prom. Notes, § 207 and note; *Thompson* v. *Hale*, 6 Pick. 258; *American Bank* v. *Jenness*, 2 Met. 288; *Carlton* v. *Bailey*, 27 N. H. 230 ; *Parker* v. *Tuttle*, 44 Me. 459; *Nevins* v. *Townsend*, 6 Conn. 5; *Camp* v. *Scott*, 14 Vt. 387; *Morey* v. *Wakefield*, 41 Vt. 24.

That in determining whether an indorsee took a demand note or bill as dishonored and overdue paper, subject to all equities or defences, the test is the length of time it has been outstanding, and not whether it has in fact been presented for payment, may be illustrated in another way.   Suppose a draft had in fact been presented for payment, and payment refused, on the very day it was issued, it would then be overdue as to the drawer, so that an action would then lie against him.   But suppose, immediately after such presentation, and on the same day, the holder should indorse the draft to another, who took it in good faith, for value, without notice of this actual dishonor; clearly such indorsee would not take it as overdue paper, subject to the equities or defences against it in the hands of the former holder, because, a reasonable time for its presentation not having expired, there was nothing to put him upon inquiry, or to charge him with notice of such equities.   *Himmelman* v. *Hotaling*, 40 Cal. 111.   In fact, in de-

termining whether an indorsee takes such paper as overdue paper, subject to such defences or equities, the question of actual demand and dishonor does not enter into the discussion. The point of inquiry is, had the paper been outstanding so long after its date as to put the purchaser upon inquiry, and charge him with notice that there is some defence to it? In view of the well-known fact that bills of exchange are not always transmitted immediately for payment, but first pass through the hands of several intermediate holders in the ordinary course of business, and in other cases are purchased by travellers to be carried with them instead of currency or coin, to be negotiated as occasion may require, we are not disposed to lay down any narrow rule on this subject. But in this case we think that the fact that this draft was, without any explanation of the reason, found outstanding nearly five months after its date, fully justified the trial court in holding it overdue and dishonored when Jordan took it, so as to charge it in his hands, or the hands of those who hold under him, with any defence or set-off which the drawer had against it in the hands of Edison.

Order affirmed.