(20 Misc. Rep. 502.)

## COLE v. STEARNS.

(Supreme Court, Trial Term, New York County. June, 1897.)

COUNTERCLAIM—BREACH OF CONTRACT.

The S. Co. having brought an action against defendant and attached certain real and personal property, it was agreed that, in consideration of defendant's giving a bill of sale of the personalty and a mortgage of the realty, the action should be discontinued, in order that a sacrifice of the property at sheriff's sale might be avoided. Defendant executed and delivered the bill of sale and mortgage, but the S. Co., on the ground that defendant had declined to execute a further agreement containing other terms, refused to carry out its agreement, and caused the property to be sold by the sheriff, resulting in a serious loss to defendant. The S. Co. having assigned the note after maturity, an action was brought against defendant to recover the balance unpaid. *Held*, that the S. Co.'s breach of its agreement with defendant constituted a good counterclaim, upon which defendant could recover the difference between the actual value of the property and the amount realized at sheriff's sale.

Action by Frederick A. Cole against George A. Stearns. Judgment for defendant.

Conway & Westbrook, for plaintiff.

Oscar Frisbie, for defendant.

McADAM, J. The action is on a $1,500 past-due promissory note made by the defendant to the Shepard & Morse Lumber Company, of Boston, and assigned by it to the plaintiff. As the transfer was made after maturity, it was subject to the equities between the original parties, and lets in the defense pleaded. While the owner of the note, it appears that the company, in a suit founded thereon, attached certain real and personal property of the defendant situate at Aldene, N. J. Subsequently, in consideration of a bill of sale of the personalty, and a bond secured by mortgage on the realty, the company agreed to discontinue the attachment action, and to expend $300 in improving the realty, to facilitate its renting. In furtherance of the agreement the defendant executed and delivered to the company the bill of sale and bond and mortgage, together with an order (in which it is recited that the action has been discontinued) directing the sheriff to deliver over to the company the personalty attached; and in every way the defendant performed his part of the agreement. The minds of the parties met in one and the same intention, and the agreement resulting was valid in law. Clark, Cont. (Hornbook Ed.) 1, 4. The defendant was an impecunious debtor, with sufficient property, but no ready money, to pay the indebtedness. The agreement was made in view of that fact—First, to insure the ultimate payment of the debt; and, second, to enable the defendant to save whatever he could out of the property seized, by opportune sales under more favorable circumstances. Both parties contemplated this end, and the receipt, dated November 10, 1893 (defendant's Exhibit No. 6), shows that they regarded the transaction as consummated and closed. If the agreement had been carried out, the company would have realized $1,200 from the personalty alone, for it brought that sum at the sheriff's sale, and there was more than enough equity in the realty to pay the demand in full.

The result demonstrates that the company would have been pecuniarily better off if it had performed its part of the contract, but it violated the agreement, proceeded with its suit, and caused the entire property to be sold at sheriff's sale, at which it brought $1,700. Enough was realized to satisfy the demand of the company, but under the then existing statute of New Jersey the proceeds of sale were divided among the company and four other creditors, who obtained judgments after the sale; and on this account the company, after the division and payment of expenses, netted only $18.89. The property was actually worth about $6,000. So that the sale resulted in a direct and immediate pecuniary damage to the defendant of about $2,300 over the $2,000 mortgage covering the realty, being $800 more than the indebtedness. The breach of contract by the company and the consequent damages are a good counterclaim against the debt in suit. Code Civ. Proc. §§ 501, 502, 1909. The plaintiff claims that the agreement to abandon the attachment proceeding was not effective, because not in writing, and for the additional reason that the defendant declined to execute another instrument expressing more clearly the conditions upon which the discontinuance was granted. But the paper referred to was presented after the minds of the parties had met in an agreement to abandon the sale, and an executory contract to that effect had been made, and the defendant was under no obligation to assent to new terms more onerous than those imposed when the contract was made. The agreement was founded on a good consideration. It gave the company immediate possession of the personalty for sale, and released to it the dower right in the realty of the defendant's wife. Clark, Cont. (Hornbook Ed.) 160. The defendant's counterclaim arises on contract, and is founded on the duty assumed thereunder by the creditor to discontinue the legal proceedings, prevent the sacrifice of the property at a forced sale, and stop sheriff's fees and expenses. The defendant was not personally served with process in the attachment suit, and did not appear therein. So that the creditor had entire control of the proceeding, and could, by ex parte order, have discontinued the action without any act on the part of the defendant; and that is what ought to have been done to satisfy the requirements of the compromise agreement. The creditor refrained, however, from entering any such order, gave no countermand of the writ to the sheriff, and purposely allowed the sale to proceed, and the entire property to be bid in for $1,700. The company knew that the defendant had not the cash to pay its claim or to release his property from the impending sale, so that it was practically understood that he could do nothing in the way of lessening the damages which might follow a breach by the company of its agreement, and that in such an event the defendant would have to submit, and seek his legal remedy. The plaintiff contends that the defendant should have applied to the New Jersey courts for a stay, but it is difficult to perceive how the failure to obtain a judicial writ forbidding a wrong justifies or palliates it. The wrongdoer always takes his chances of the law reaching him, and is never regarded with favor when it calls him to account. Under the circumstances, the measure of damages naturally and directly flowing from the breach, and within the supposed contemplation of the parties,

would seem to be the difference between the actual value of the property sold and what it realized at the sheriff's sale. No other rule would indemnify for the wrong, and, as the difference amounts to more than the plaintiff's demand, there must be judgment for the defendant.