[No. 7859.]

FIRST NATIONAL BANK OF ROCKY FORD v. LEWIS.

1. PLEADING—*Counterclaim*, as used in § 63 of the Revised Code, is a broader term than set-off or recoupment, and includes both of them. (126)

The State Bank assigned to the plaintiff, after maturity, a promissory note of defendant. The bank was then insolvent, and on the following day closed its doors. Defendant, at the time, had on deposit in the bank a sum in excess of the amount due upon his note. *Held* that in an action by the plaintiff upon the note defendant was entitled to set off the amount of the note.

The common law rule that the indorsee of an overdue promissory note takes it exempt of all equities which do not attach to or inhere in the note itself, at the time of the transfer, is so modified by the code that all equities existing between the maker and payee, at the time of the assignment, or notice thereof, avail to the maker, in an action by the assignee. (128, 129)

2. DEMAND—*When Necessary.* The account of a depositor in an insolvent bank is due without demand. (130)

3. PROMISSORY NOTE—*Payable Without Defalcation.* The words are mere surplusage; they have not the effect to waive set-offs.    (131)

4. NEW TRIAL—*Motion—Assignment of Grounds.* All errors relied upon as ground of a motion for a new trial should be specifically set forth. Any error not so presented should be regarded as waived (130)

*Error to Otero District Court.*—Hon. J. E. RIZER, Judge.

Messrs. ADAMS & GAST, for plaintiff in error.

Mr. J. H. VOORHEES, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The defendant in error Lewis executed and delivered his promissory note for $1,500.00 to the State Bank of Rocky Ford, which was assigned after maturity to the First National Bank of Rocky Ford, plaintiff in error, who later brought suit upon it against Lewis to recover judgment for the amount then due.

The circumstances surrounding the controversy are in the main as follows. The State Bank of Rocky Ford, being indebted to the First National Bank of that city in the sum of $1,051.45, balance on exchange, gave the latter a draft for the amount on a Pueblo bank, which draft was dishonored and returned unpaid to the First National Bank of Rocky Ford. Upon demand, on December 30th, 1907, the State Bank, being unable to pay the draft, asked for further time, and turned over the Lewis note as collateral security for the debt. The record shows that the State Bank, on the day the Lewis note was turned over to the First National Bank of Rocky Ford, had committed an act of insolvency through failure to pay and discharge its draft; that it was actually then insolvent, and closed finally on the next day; that on the second day thereafter it was placed in the hands of the State Bank Commissioner and subsequently a receiver was ap-

pointed. At that time Lewis had on deposit in the bank a sum in excess of the amount due on his note, and this he pleaded in set-off. The note was drawn with the payee blank, and when it came into the hands of the plaintiff in error its name was inserted as payee for purposes of suit. Upon trial to the court judgment was rendered in favor of defendant, which the bank brings here for review.

The main question presented is, was the set-off properly allowed? Section 62 of the Code of Civil Procedure, R. S. 1908, provides, among other things, that, secondly, the answer shall contain a statement of any new matter constituting a defense, or counterclaim. Section 63 thereof reads:

"The counter-claim mentioned in the last section, shall be one existing in favor of the defendant or plaintiff, and against a plaintiff or defendant, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"First.—A cause of action arising out of the transaction set forth in the complaint or answer, as the foundation of the plaintiff's claim or defendant's defense, or connected with the subject of the action.

"Second.—In an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action."

Sections 3 and 4 provide:

"Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this act."

"In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due."

Counterclaim, as used in section 63, *supra,* is a broader term than either set-off or recoupment, and includes both of them.—25 Ency. Law, page 570; *St. Louis National Bank v. Gay,* 101 Cal. 286, 35 Pac. 876. This sec-

tion expressly and explicitly gives the right to interpose this set-off against the original payee, and section 4, *supra,* preserves it for application in defense of just such an action as the one now before us, namely; a suit upon a promissory note by an assignee, taking it after due. This holding is not only made possible but irresistible, when it is concluded, as has been often declared in code states, that set-off is embraced in the term counterclaim. New York, California, Nebraska, North Carolina and other states have construed substantially these same provisions. In *St. Louis National Bank v. Gay, supra,* under similar facts, the court said:

> " 'Counterclaim,' as used in our code, includes both recoupment and set-off, and is, strictly speaking, a pleading by which matters arising out of recoupment or set-off are averred. It may be used by defendant to plead as against the plaintiff: '1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the cause of action; 2. In an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action.' (Code Civ. Proc., sec. 438.)"

Set-off was allowed under facts similar to those here presented in *Cole v. Stearns,* 20 Misc. Rep. 502, 46 N. Y. Supp. 238. The conflict between California and New York concerning these sections, as noted in section 166 of Pomeroy's Code Remedies, has to do with the time set-off accrues under their respective provisions. They are in harmony upon the proposition under consideration. In *Harris v. Burwell and Parham,* 65 N. Car. 584, the court, commenting on a provision like section 4 of our code, said:

> "The language is as broad as it can well be; so that a note assigned after it is due, a half dozen times, will be subject to any set-off or other defence that the maker had against any one or all of the assignees at the date of assignment, or before notice thereof."

In *Edney v. Willis*, 23 Neb. 56, 36 N. W. 300, a like conclusion was announced:

"Section 31 of the code provides that, 'In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense now allowed; but this section shall not apply to negotiable bonds, promissory notes, or bills of exchange, transferred in good faith and upon good consideration, before due.' This clearly implies that set-off may be allowed against a note transferred after due."

In *LaDue v. First National Bank of Kasson*, 31 Minn. 33, 16 N. W. 426, construing a statute upon the subject of set-off, the court said:

"The effect of this statute, clearly, is to place an overdue bill or note on the same footing as any other chose in action, and, if it be assigned after due, a set-off to the amount of the note or draft may be made of any demand existing against any person who has assigned or transferred such note or bill after it became due, if the demand is such as might have been set-off against the assignor while the note or bill belonged to him. A set-off arising out of an independent transaction against an intermediate holder is thus placed upon the same footing as an equity attaching to the bill or note itself against the original payee."

The note in suit was assigned by the payee after maturity, and was thus shorn of immunity from all defenses which might have been urged against it before assignment, or notice thereof, by the maker while yet in the hands of the payee, including that of set-off allowed by the code. While the note still retained its negotiable character, yet it was subject, under the facts of the case, to any defense which would have been available had it been nothing more than a simple contract, or chose in action, transferred by assignment. Under the code provision, which allows as set-off against an action on contract any other cause of action also arising on contract, it seems clear that in an action on the note in question by the payee, the State Bank of Rocky Ford, the maker

could plead as set-off the amount he had on deposit with that bank. This being so, since the present holder of the note acquired it after maturity he held it subject to every defense which the maker might have against a suit on it by the payee, and the set-off was therefore properly allowed. As a general rule a purchaser of overdue paper of this sort is put on inquiry, its non-payment being a suspicious circumstance. These further authorities support this conclusion: *Oldham v. Wallace,* 4 Ark. 559; *Gatewood v. Denton,* 3 Head (Tenn.) 381; *Bull v. First National Bank of Kasson,* (C. C.) 14 Fed. 612; Pomeroy's Code Remedies, sec. 163; and 34 Cyc., pp. 749-750.

Counsel for plaintiff in error contend that the code provisions being remedial rather than substantive, the question presented must be resolved by application to it of common law principles. It is sufficient to say that nowhere, so far as we are advised, have code provisions such as are now before us been so construed, and no authority is cited to support the contention. The code is a special enactment of the legislature, and we see no valid reason for saying that an affirmative right definitely declared and given by it is meaningless and not substantive.

The case of *Cooper v. Bank,* 9 Colo. App. 169, 47 Pac. 1041, is cited by plaintiff in error to support its contention on this branch of the case. That decision is in no sense authority upon the question here determined. There the defense interposed was an oral contract made at the time of or prior to the making of the note, the effect of which was to impeach, invalidate and destroy the note, and did not constitute a set-off. That case is clearly distinguishable from this one on the facts. Moreover, the opinion therein follows a common law rule and was apparently announced without the court's attention having been directed to the code provisions now under consideration.

The right to the set-off here interposed rests upon our code provisions. The common law rule, that the indorsee of an overdue promissory note takes it exempt from all equities which do not attach to or inhere in the

note itself at the time of assignment, which has been correctly stated by counsel for plaintiff in error in their brief, has no application, as with us this rule has been so modified by the code that the note in question, which was assigned when overdue, is, in a suit upon it by the assignee against the maker thereof, subject to all the equities which existed between the maker and the payee at the time of assignment or notice thereof.

Section 58 of our negotiable instrument law provides that "In the hands of any other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." One of the essentials to constitute a holder in due course is that the instrument must have been acquired before maturity. It is, however, unnecessary for the purposes of this decision to determine whether the word "defenses," as used in section 58, has such broad significance as to include all equities and defenses however arising, or is limited to those which inhere in and grow out of the note itself, as at common law, since in any event the code provisions plainly give a right of set-off under the facts of this case.

The suggestion that the deposit account of the defendant was in no event available as a set-off, because not due, no demand for payment thereof having been made, seems not to be properly here for consideration. A motion for a new trial was interposed, and while that was not indispensable, as the case was tried to the court, since such motion was made all errors relied upon should have been specifically set forth in it, so as to give the trial court full opportunity to know the precise reasons which them after full hearing. It is but fair to the trial court that, on review, it should be assumed and held that any alleged error not so presented was waived. Such at least ought in logic and reason to be the rule. The overruling of the objection interposed to the introduction of evidence of the bank's indebtedness to the defendant was not alleged in the motion. Moreover, we think there is no as-

signment of error here under which this objection can fairly be urged or considered.

In any event, the contention is without merit, for clearly the State Bank was, upon the record before us, insolvent when it transferred the note in question, and for this reason the account of Lewis was due without demand, and he was therefore then entitled to urge, as a set-off to his note, this claim against the bank.—*Zane on Banking*, sec. 144; *Merchants' Exchange Bank v. Fuldner*, 92 Wis. 415, 66 N. W. 691; *Scott v. Armstrong*, 146 U. S. 499, 36 L. Ed. 1059, 13 Sup. Ct. 148.

The plaintiff's remaining contention, that because of the presence in the note of the expression "without defalcation" all rights of set-off are waived, cannot be upheld, as these words are nothing more than a relic of pronounced antiquity in the law, a mere remnant of common law forms, and wholly without meaning in the light of modern usage, under the practically uniform provisions of the negotiable instrument law now in force in this and many other states. A negotiable promissory note is defined by that law to be an unconditional promise or order in writing and signed by the maker or drawer, to pay a certain sum of money to order or bearer on demand or at a fixed or determinable future time. While the words "without defalcation" may have had a use and meaning in the negotiation of written instruments in some distant past, they are now no more than mere surplusage. Our negotiable instrument act stamps an instrument negotiable or non-negotiable according as it conforms or fails to conform to the requirements of that act. It must be a written instrument which provides for the unconditional payment of a fixed sum on demand or at a fixed or determinable future time. The words "without defalcation" add nothing whatever to the force and effect of such an instrument, either before or after maturity.

The judgment is in all respects right, and is accordingly affirmed.

CHIEF JUSTICE MUSSER and Mr. JUSTICE WHITE, concur.