William L. O'Connell, Appellant, v. Gilbert Fitzpatrick, Appellee.

Gen. No. 38,777.

Opinion filed October 13, 1936.

SCHUYLER, WEINFELD & HENNESSY, of Chicago, for appellant; HOWARD D. MOSES and JAY STOUGH, both of Chicago, of counsel.

ALDEN, LATHAM & YOUNG, of Chicago, for appellee; WILLIAM T. ALDEN and SIDNEY F. MOODY, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Chicago Bank of Commerce, the indorsee of a collateral judgment note for $1,000 dated October 2, 1930, due "On Demand" made by defendant, payable to the Old Dearborn State Bank, caused judgment by confession to be entered on the note against defendant. Afterward the judgment was opened up and defendant given leave to plead. The case was put at issue and on the trial the receiver of plaintiff was substituted as plaintiff. The court found in defendant's favor and plaintiff appeals.

The record discloses that defendant has been practicing his profession as a physician and surgeon in Chicago for many years. He was a stockholder in and had business dealings with the Old Dearborn State Bank and with its predecessor, covering a period of about 10 years. On October 2, 1930, he executed the collateral note in suit, in which it is stated that he deposited as collateral security a bond for $1,000 issued by the Lake-State Bank Building, bearing interest at seven per cent and due in 1939.

March 28, 1931, the Chicago Bank of Commerce assumed the deposit liabilities of the Old Dearborn State Bank, the latter having been in failing condition for a number of years, and at that time the note in question was indorsed by the Old Dearborn State Bank and with other notes and securities was delivered to the Chicago Bank of Commerce as collateral security for its assumption of the deposit liabilities. Upon refusal of defendant to pay the note to the Chicago Bank of Commerce the bank caused judgment by confession to be entered.

Defendant's contention in the trial court and in this court, as testified to by himself, is that for a number of years he had dealt with the Old Dearborn State Bank and its predecessor, and was well acquainted with a number of the officials of the bank; that prior to and on October 2, 1930, he was solicited by a representative of the Old Dearborn State Bank, to buy a 7 per cent $1,000 bond, secured by a first mortgage on the Lake-State Bank Building; that he told the bank representative he was not in funds at that time and thereupon the representative said he could "sign a note," and on October 2nd he executed the note in question in payment of the bond; that he did not see the bond since it was in possession of the Old Dearborn State Bank and kept by it as collateral security for the $1,000 note; that later, February 17, 1931, he was advised by the issuer of the $1,000 bond that it was a second mortgage bond and at that time had little or no value; that afterward, on or about March 1, 1931, a representative of the Old Dearborn State Bank demanded payment of the note; that he refused to pay the note, claiming he had been defrauded by the Old Dearborn State Bank in selling him a junior mortgage represented to be a first mortgage.

Defendant's counsel contend that defendant, under the facts as testified to by him, had a good defense to the note as against the Old Dearborn State Bank, and that this defense is available to him against plaintiff, the Chicago Bank of Commerce, because the note was negotiated by the Old Dearborn State Bank an unreasonable time after its date, and therefore the Chicago Bank of Commerce was not a holder in due course.

On the other side, plaintiff's position is (1) that under the particular facts in the case, the note was negotiated a reasonable time within the meaning of the Negotiable Instruments Act, (2) that the court

erred in refusing to permit plaintiff to prove the custom of Chicago banks in negotiating notes payable on demand, and (3) that the court erred in refusing plaintiff a new trial on the ground of newly discovered evidence.

On the trial when plaintiff called witnesses in rebuttal, a witness who in October, 1930, was connected with the Old Dearborn State Bank testified that although his memory was not clear—more than five years having elapsed since the execution of the note in suit—he thought defendant had purchased the $1,000 real estate bond a long time prior to the execution of the note in suit. At the conclusion of the hearing the court entered judgment for defendant, and a few days thereafter plaintiff moved for a new trial, supporting his motion by an affidavit which clearly tended to show, from the records of the Old Dearborn State Bank, that defendant had purchased the $1,000 real estate bond July 17, 1928, which was more than two years before he executed the note in question, that the $1,000 note was given by defendant to the bank to evidence a loan of $1,000 made by the bank on the date of the note, and at that time defendant delivered the real estate bond to the bank as collateral security for the note.

We think it clear the court should have granted plaintiff a new trial, because if defendant had executed his note about two years after he had purchased the real estate bond (and this seems to be borne out by the records of the bank) defendant's claimed defense would have been entirely wiped out.

Considering all the facts in this case, we think that whatever negligence plaintiff's counsel may have been guilty of in not presenting the records of the bank on the hearing, it ought not to be controlling.

We are also of opinion that whether the note was negotiated within a reasonable time as defined by the

statute, would depend to some extent upon the "usage of trade or business" between Chicago banks, and the court should have permitted plaintiff to adduce evidence on this question, as he sought to do, although many of the questions put by counsel were improperly framed, the witness being interrogated as to his "opinion" and not as to facts which it was claimed constituted a custom. The offered evidence tended to show whether or not plaintiff was a holder in due course within the meaning of the statute. Some of the pertinent provisions of that act are sections 52, 71 and 192, ch. 98, Ill. State Bar Stats. 1935.

Section 52 defines a holder in due course to be, "That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact." And although the Old Dearborn State Bank had demanded payment of the note from defendant, as he testified, before the note was negotiated, this fact alone would not prevent the Chicago Bank of Commerce from being a holder in due course, for it had no notice of such demand and refusal. *LaDue v. First Nat. Bank of Kasson,* 31 Minn. 33; *Himmelmann v. Hotaling,* 40 Cal. 111; 2 Daniel on Negotiable Instruments, 7th ed., sec. 905.

Section 71 provides: "Where it [the instrument] is payable on demand, presentment must be made within a reasonable time after its issue"; and section 192: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business, (if any) with respect to such instruments, and the facts of the particular case." We had occasion to consider some of these provisions in *Nagel v. J. L. Hanson,* 262 Ill. App. 160.

Counsel for both parties apparently take the position that the note in suit bore interest at the rate of five per cent per annum (although the note specifies

interest after maturity at the rate of seven per cent per annum) and the evidence tends to show that the interest was paid monthly at the rate of five per cent per annum and indorsed on the note, which, together with the other facts, is to be considered in determining whether the note was negotiable within a reasonable time. *Yates v. Goodwin,* 96 Me. 90; *Gershman v. Adelman,* 103 N. J. L. 284; *McLean v. Bryer,* 24 R. I. 599; *Murray v. Third Nat. Bank of St. Louis,* 234 Fed. 481; *National Bank v. Knight,* 86 W. Va. 319.

For the reasons stated the judgment of the superior court of Cook county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.