P. P. MAST & Co. *vs.* JAMES MATTHEWS.

June 8, 1883.

**Evidence—Proof of Written Instrument.**—The latter portion of Gen. St. 1878, *c.* 73, § 89, relating to proof of signatures of written instruments applies only to an instrument upon which an action is brought against the maker thereof, or to an instrument upon which a counterclaim or defence against the maker thereof is founded.

Appeal by plaintiff (a corporation) from a judgment of the municipal court of Stillwater, where the action was tried by the court.

The instrument in suit, referred to in the opinion, was as follows, viz.:

"$35.00.                                WARREN, March 19th, 1878.

"On or before the 1st day of December, 1879, for value received in one Buckeye Drill No. —, I promise to pay S. L. Sheldon, or order, thirty-five dollars, at the Lumberman's National Bank, in Stillwater, with interest at the rate of 7 per cent. per annum if paid when due, and 7 per cent. per annum if not paid when due, from date until paid. I also agree to pay reasonable attorney's fees if suit is commenced to collect this note. The express condition of the sale and purchase of said machine is such that the title, ownership and right of property does not pass from the said S. L. Sheldon until this note and interest is paid in full. That the said S. L. Sheldon has full power to declare this note due and take possession of said machine at any time he may deem himself insecure, even before the maturity of the note.

"For the purpose of obtaining credit, I certify that I own in my own name 160 acres of land in the town of Warren, county of St. Croix, state of Wis., with 120 acres improved, worth at a fair valuation

$6,000. It is not incumbered by mortgage or otherwise, except the amount of $2,000. I own $1,000 worth of personal property over all indebtedness, except the incumbrance on my land if any.

"JAMES MATTHEWS."

Upon this instrument was the following indorsement, viz:

"Stillwater, Minn.

"P. P. MAST & Co., Springfield, Ohio.

"For and in consideration of one dollar to me in hand paid by P· P. Mast & Co., the receipt of which is hereby acknowledged, I do hereby sell, assign, transfer and set over unto said P. P. Mast & Co. all my right, title and interest in and to the within note, and any and all benefit to be derived therefrom.

"*Madison, Wis., July 10th, 1878.*

"S. L. SHELDON."

*F. V. Comfort,* for appellant.

*J. N. & I. W. Castle,* for respondent.

BERRY, J.    This is an action upon an instrument similar in general character to that considered in *Third Nat. Bank* v. *Armstrong,* 25 Minn. 530.    See, also, *Jones* v. *Radatz,* 27 Minn. 240; *Stevens* v. *Johnson,* 28 Minn. 172.    From the reasoning of the court in the first of these cases, it appears that it is not a promissory note, because the sum which it promises to pay is not payable absolutely and at all events.    It is made payable to S. L. Sheldon or order, by whom it purports to have been assigned to the plaintiff, by writing indorsed upon it.    The assignment is denied in the answer.    No evidence having been offered to show that the signature of the indorsed writing was that of Sheldon, the court below, holding that plaintiff, which claims as assignee of Sheldon, had failed to show title to the instrument, dismissed the action.

The burden of proving the signature of the assignment as a part of their case was on the plaintiff, unless it is excused by some provision of statute.    It contends that it is excused by Gen. St. 1878, c. 73, § 89, which reads:  "In actions brought on promissory notes or bills of exchange by the indorsee, the possession of the note or bill is *prima facie* evidence that the same was indorsed by the person by whom it

purports to be indorsed; and every written instrument, purporting to have been signed or executed by any person, shall be proof that it was so signed or executed, until the person by whom it purports to have been signed or executed shall deny the signature or execution of the same by his oath or affidavit; but this section shall not extend to instruments purporting to have been signed or executed by any person who shall have died previous to the requirement of such proof."

The first provision of this section has no application to this case, because the instrument in suit is neither a promissory note nor bill of exchange. Literally read, the second provision of the section applies to every instrument offered in evidence, so that the production, upon a trial, of a note or bill, whether it be in suit or not, would be *prima facie* evidence of the genuineness of its signatures and indorsements. If this be its effect, then the first provision would appear to be superfluous—a result not to be arrived at unless inevitable. Again, to permit a party to introduce in evidence, without any proof of its execution, an instrument of the existence of which, or of the intention to introduce which, the adverse party has no knowledge, will, in a vast number of cases, impose great hardships upon the latter. It will relieve the party introducing the instrument of a burden of proof naturally and reasonably resting upon him as a part of *his* case, to shift it upon one who has no notice that he will be required to assume it, and who, consequently, cannot be expected to be prepared to do so. Furthermore, it would, in frequent instances, force him to assume this burden when it was utterly out of his power to find or to reach the person by whom the instrument was made, and thereby, without any fault or power of remedy upon his part, deprive him of the reasonable right to insist that his adversary shall prove the case which he sets up against him.

It is not necessary to give the second provision of the section the literal rendering which leads to these unreasonable and unjust results. We think they could not have been intended by the legislature. Reasonably construed, the purpose of the enactment appears to have been to relieve a party of the trouble and expense of proving in the first instance an alleged fact, the existence or non-existence of

which is necessarily within the knowledge of the adverse party, and of the necessity (to his opponent's case) of establishing which such adverse party is notified by his opponent's pleading.   With reference to this purpose, we think the second provision of the section under consideration applies only to an instrument upon which an action is brought against the maker thereof, or to an instrument upon which a counterclaim or defence against the maker thereof is founded; an indorsement or assignment being an instrument in the meaning of the statute.   As to notes and bills, the first provisions of the section would appear to go somewhat further than this, probably out of the favor with which the necessities of business require commercial paper to be treated.   From these views it follows that this action, which is brought against the maker of the instrument in suit, and not against Sheldon, the assignor, was properly dismissed by the trial court.

The judgment that plaintiff "take nothing" by his action is not erroneous.   See 1 Humphrey's Forms, 305–309.

Judgment affirmed.