# SOLWAY STATE BANK, BY A. J. VEIGEL, v. SCHOOL DISTRICT NO. 26 OF BELTRAMI COUNTY.[1]

January 28, 1927.

No. 25,516.

**Action on warrants of school district.**

In an action by a bank against a school district to recover on numerous warrants of the latter, it appears that one S was both treasurer of the district and sole managing officer of the bank. He was embezzling all the moneys of the district as they were received. When warrants were presented to him, he did not pay them with school district funds but purchased them for the bank with its funds. The only defenses are payment and estoppel. It is held:

**Defendant entitled to judgment on warrants receipted on their face by payee or indorsee.**

(1) The introduction in evidence of warrants which on their face have been receipted by payee or indorsee did not establish a prima facie case for plaintiff because they tended as much to prove payment as to prove the original causes of action on the warrants themselves. On such warrants defendant was entitled to judgment.

**Plaintiff entitled to directed verdict on warrants not receipted or indorsed by payee, bought with bank's money and shown on defendant's books to be its outstanding obligations.**

(2) As to warrants not receipted but indorsed by the payee, purchased by funds of the bank and still shown on the books of defendant as its outstanding obligations, the case for plaintiff was complete and a verdict should have been directed accordingly.

**Nothing else appearing, bank entitled to recover on warrants not receipted but indorsed by payee and bought with bank's money.**

(3) Although the warrants not receipted but indorsed by the payees may have been presented for payment to the defaulting treasurer, who at the same time was cashier of the bank, it was his intention to buy them for the bank. He used the bank's money for that purpose. Many were deposited with the bank for the credit of the payees. The

[1]Reported in 212 N. W. 25.

mere assumption of the payee that the warrants were being paid rather than transferred to the bank is not controlling, the fact being that they were purchased rather than paid. There is no other evidence of payment and the warrants remain valid causes of action upon which, nothing else appearing, there should be a recovery for the bank.

### Bank entitled to recover on warrants neither indorsed nor receipted but transferred to bank in same manner.

(4) As to those warrants which were neither indorsed nor receipted but which were transferred to the bank in the manner just indicated, there should also be a recovery, indorsement not being necessary to the transfer of the cause of action on the warrant.

### Bank not entitled to recover on warrants taken by treasurer with his own funds and then transferred to bank.

(5) The defaulting treasurer, in the first instance, took over some of the warrants himself by the use of his own funds and thereafter transferred them to the bank. As to such warrants there can be no recovery because the bank took them subject to the defenses which were fatal to them in the hands of the defaulting treasurer.

### Bank not chargeable with estoppel as to any warrants, because in deceiving defendant treasurer was not acting for bank.

(6) There was no estoppel as to any of the warrants because in the means adopted for deceiving defendant, referred to in the opinion, the treasurer was not acting or appearing to act for the bank and therefore the latter is not chargeable for the result through an estoppel.

### Statutory costs denied.

(7) Appellant penalized for useless and excessive printing by denial of disbursements and statutory costs.

Banks and Banking, 7 C. J. p. 540 n. 33 New.
Costs, 15 C. J. p. 270 n. 33.
Payment, 30 Cyc. p. 1253 n. 15; p. 1264 n. 28.
Schools and School Districts, 35 Cyc. p. 985 n. 33, 35; p. 1061 n. 24, 27.

Plaintiff appealed from an order of the district court for Beltrami county, Wright, J., denying his alternative motion for judgment or a new trial. Reversed.

*Hubert Harvey*, for appellant.

*Graham M. Torrance*, for respondent.

STONE, J.

Action by the commissioner of banks to recover on numerous warrants issued by defendant school district to others as payees but alleged to have become the property of Solway State Bank, now in process of liquidation by plaintiff. After verdict for defendant, plaintiff appeals from the order denying his alternative motion for judgment notwithstanding or a new trial.

The case is a novel one. Counsel do not pretend to have cited any precedent that helps much in its decision. There are 147 warrants involved. They were issued during 1922, 1923 and 1924. One Frank S. Smith was then treasurer of defendant and also cashier and sole managing officer of the bank. His codirectors were the absentee kind who did not permit their duties as directors to interfere much with their other pursuits. Smith was an embezzler. He admits the theft of more than the money called for by the warrants. He insists that he filched nothing from the bank and that all his peculations were of school district funds. The original validity of all but one of the warrants is admitted. Unless discharged by payment or barred by an estoppel, they remain legal causes of action. Raton Waterworks Co. v. Town of Raton, 174 U. S. 360, 19 Sup. Ct. 719, 43 L. ed. 1005. For plaintiff it is claimed that they were sold and transferred to the bank as an assignee for value. It cannot claim as a holder in due course because the warrants are not negotiable. The principal defense is payment.

As Smith received the district's funds he commingled them with his own, depositing most if not all of them in his private account with the bank. He did not have there or elsewhere any account as treasurer. He took the moneys as they came for his own and refunded, if at all, only as occasion required in order to conceal his defalcation. It may have been his idea that there was less danger of detection on the school district than on the banking side of his activities. He asserts that the bank books which he kept are correct. As each warrant was presented to Smith it was entered immediately as a bill receivable of the bank. Sometimes the bank's cash, never the school district's, was paid for the warrant. More

frequently it was deposited by or for the payee and passed directly to the credit of his account. For the purposes of the entries on the bank's books, Smith made no distinction between warrants which were receipted by the payees and those which were indorsed. Some were neither receipted nor indorsed. None was indorsed, as municipal orders usually are when not paid for want of funds, as having been presented and not paid for that reason. Without such indorsement they do not draw interest. Smith says that he deliberately refrained from making that indorsement because if it appeared on many warrants the truth would speedily be known.

He says also that he first discovered that he was short in 1919. When settlement time came he presented to the auditing committee of the school board as paid enough of the warrants then held by the bank as bills receivable to cover his shortage. Few of them were receipted but all were entered as paid upon the register of warrants which Smith kept as treasurer. That device was resorted to in each of the following years to and including 1924. In 1923 the bank had pledged so many of the warrants as collateral to its own debts that Smith did not have enough on hand to present to the auditing committee as a cover for his then shortage. He told the other members of the committee that "a certain quantity of those orders" was outstanding as collateral. He seems to have "got by," as he puts it, even in that situation. In 1922 or 1923 he presented three or four forged orders, one of them for something like $1,500. Any real audit of Smith's transactions either as treasurer or banker would have disclosed the truth.

The warrants fall into five classes which will be treated in their order.

1. *Warrants receipted on their face.* The warrants were issued on a blank which included, on the face of the instrument, a form for the filling in and signature of a receipt for payment. On some, that receipt has been filled in and signed by the payee or an indorsee. When any of these receipted warrants were introduced in evidence they tended as much to prove payment as they did the original issue. The proof for plaintiff therefore was equivocal. A prima facie case

was not made out and defendant was entitled to a directed verdict with respect to the warrants receipted as indicated.

2. *Warrants not receipted but indorsed by the payee and appearing on the books of defendant as outstanding obligations.* A few of the warrants are adequately characterized by that phrase. Their issue for adequate value being admitted and the transfer to the bank proved, its possession of them, together with the fact that even on the books of defendant they appear unpaid, was enough to entitle plaintiff to a directed verdict on such warrants.

3. *Warrants not receipted but indorsed by the payees.* By far the greater number of the warrants and the bulk of them as to value are in this class. The warrants themselves, although not receipted, were entered by Smith upon his treasurer's register as paid. The evidence for plaintiff consists of the warrants themselves, their indorsements and such data as the books of the bank furnish. We have not attempted an independent investigation of the record with respect to each warrant. It is sufficient to say that, so far as the bank books reflect the transactions, a great many if not most of the warrants appear to have been deposited directly by the payee to the credit of his account with the bank. There are deposit slips so indicating and of course the appropriate credits upon the individual accounts. In some cases where there was no deposit, the bank's cash was exchanged for the warrants. However the warrant was taken, whether as a deposit or in exchange for cash, the bank was placed in the legal and unqualified possession of an evidence of indebtedness against defendant, which could be and normally is transferred by simple indorsement. True, the warrants not being negotiable and the action not being on the indorsements, they were not self-proving under the statute. Section 9887, G. S. 1923, as construed in P. P. Mast & Co. v. Matthews, 30 Minn. 441, 16 N. W. 155. But their initial validity is unquestioned and the transfer to the bank for value and by indorsement established by extraneous evidence. The result in each case was to transfer to the bank the cause of action on the warrant. It remains there unless it has been discharged by payment or is barred by an estoppel.

Payment is an affirmative defense. The burden of proof is upon him who alleges it, here the defendant. It does not sustain that burden that some or all of the payees when they presented their warrants to Smith thought or assumed that he was paying them as treasurer rather than buying them as banker. The argument that mere indorsement by payee may evidence payment as well as transfer has merit. But it must fail when considered with the customary receipting of a warrant on its face when paid, and the further fact that all the other indicia of transfer by indorsement are present. The payees were doubtless not questioning whether the warrants were paid or transferred. They were indifferent to the process so long as it got them their money. Smith's acts seem to have been unequivocal. They are controlling even though he was a felon. He intended to buy the warrants for the bank and did so. Payment of the warrants as they were presented was for the most part impossible for lack of funds. The moneys which should have been available for that purpose had been or were about to be stolen. Payment of any of the warrants, as distinguished from their purchase, was impracticable, or at least so considered by Smith. Except as herein noted otherwise, the whole record speaks rather conclusively for transfer to the bank and not for payment by the treasurer. In any event the defense of payment has not been established and on the warrants now under consideration, if this record presents the whole case with respect to them, plaintiff is entitled to judgment.

4. *Warrants neither indorsed nor receipted.* There are but a few such and we think the issue as to them, on the present record, must be found for plaintiff. There is proof of delivery to the bank in exchange for the equivalent of each warrant in money or credit. That is enough to show an assignment to the bank. Indorsement by the payee is not an essential. The burden of proving payment has not been sustained by defendant.

5. *Warrants for which Smith issued his personal check.* Certain warrants were taken over from the payees by Smith personally in exchange for his own checks. It may be a question of fact whether such warrants were paid by Smith as treasurer rather than transferred to him as banker. But, assuming that payment did not take

place, the fact would be that Smith became, and remained for the time being, the transferee and holder of such warrants. When he thereafter transferred them to the bank, as he did in every case, the latter took them, at the best, subject to the defenses which existed against them while in the hands of Smith. He could not have collected them from defendant because it was his duty to pay them and he was then owing the district more than the amount of the warrants. The bank being in no better position with respect to this class of warrants than was Smith, it cannot recover on them. As to such warrants defendant is entitled to judgment.

6. *Estoppel.* The argument is advanced for defendant that in any event the bank was estopped by Smith's acts from enforcing any of the warrants. It is not a case of allocating loss as between two innocent litigants, one of whom has been negligent and the other diligent. The fact is that Smith was woefully free from adequate auditing either as treasurer or cashier. So far as this record discloses, his intention was to steal the moneys of the school district rather than those of the bank and that is probably what he accomplished. But that is not the issue. The acts of Smith, which are assigned as the basis of an estoppel, were in his capacity as treasurer rather than banker. He deceived the auditing committee of the school board and in doing that was treasurer and not cashier. The records which they were examining and which they approved were the records of their treasurer, not of the bank. It was as treasurer that he presented as paid the unpaid and unreceipted warrants which he had stolen for the time being from the bank. It cannot be said that it was the banker rather than the treasurer who by means of the blanks in his possession forged some warrants as an added cover for his shortage as treasurer. The resulting equities are no greater in favor of defendant than they are in favor of the bank and we must deny the claim of an estoppel.

In any contest between a bank and those who have dealt with its officers upon the faith of a course of business which the directors have permitted, it may be that the latter must be charged with the knowledge which diligence and a proper performance of their duties would have given them. Beyl v. Swanson, 165 Minn. 278, 206

N. W. 453. But that principle has no application here. Neither defendant nor any of its officers were misled by any apparent authority which the directors of the bank permitted Smith to exercise for it. It is to such problems that the principle just referred to applies. What deceived the representatives of the school district was not the exercise by Smith of any authority, actual or apparent, for the bank, but his criminal misrepresentation concerning his trusteeship for the school district. His misuse of the warrants, temporarily filched from the files of the bank, is but a circumstance, one of his methods of deceit. In so using the warrants he was not acting nor appearing to act for the bank. He was acting and appearing to act as treasurer. The bank was in no way bound by his temporary theft of the warrants, nor the use he made of them, for in so doing he was not acting on any business of the bank nor within the scope of any authority which he possessed or appeared to possess as cashier. In that and similar aspects the case is in strong contrast with Engen v. M. & M. St. Bank, 164 Minn. 293, 204 N. W. 963, 43 A. L. R. 610.

The case as it stands does not present the issue whether the bank can be charged as an involuntary trustee with Smith for the conversion by the latter of so much of defendant's funds as he deposited with the bank to his own account, and thereby converted to his own use. Query: In that process, was the knowledge of Smith the knowledge of the bank within the rule of State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925. No attempt has been made to raise that issue or by equitable offset to invoke the principle "that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit, or where charged with notice of the conversion join in assisting others to appropriate it for their private benefit, without being liable to refund the money if the appropriation is a breach of the trust." Allen v. Puritan Trust Co. 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518. See also Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934; Am. Nat. Bank v. Fidelity & Deposit Co. 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666; Emerado F. Elev. Co. v. Farmers Bank, 20 N. D. 270, 127 N. W. 522, 29 L. R. A. (N. S.) 567; Atwood-Stone Co. v. Lake County Bank, 38 S. D. 377, 161 N. W. 539. Whether that proposition

can be applied to the case we do not know. The merit of it will be for initial consideration below if, in the event of a new trial, application is made to amend the answer so as to claim an equitable off-set against the warrants, because of the conversion by Smith through the bank of the funds of defendant which should have gone in payment of the warrants.

7. We cannot pass the case without noting a violation of the rules in the printing of the record. The summons and complaint together cover 181 pages. There was no excuse at all for printing the summons. Each warrant is declared on as an independent cause of action. It would have been sufficient to print the first cause of action, followed by a statement that each of the others was similar except for the details of the warrants. The latter could have been set forth most conveniently in a tabulation, both the convenience and sufficiency of such a tabulation having been demonstrated by the excellent use of one in the brief for appellant. No disbursements will be allowed appellant for printing the first 170 pages of the record and statutory costs will be denied.

The order appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

So ordered.