# FIRST NATIONAL BANK OF WINDOM v. CONSOLIDATED SCHOOL DISTRICT NO. 28, JACKSON COUNTY, AND OTHERS.
# FIRST NATIONAL BANK OF HERON LAKE v. SAME DEFENDANTS.[1]

Nos. 28,579, 28,580.

October 2, 1931.

[1]Reported in 238 N. W. 634, 240 N. W. 662.

636

*O. J. Finstad* and *A. McC. Washburn,* for appellants.
*E. H. Nicholas* and *Putnam & Carlson,* for respondents.

WILSON, C. J.

On August 28, 1928, the First National Bank of Windom in good faith and for value bought from the Farmers State Bank of Wilder warrants issued by defendant district, herein referred to as the defendant, in April, May, and June, 1928, aggregating $1,285.

On January 16, 1929, the First National Bank of Heron Lake in good faith and for value bought from the Farmers State Bank of Wilder warrants issued by defendant from March to December, 1928, aggregating $3,476.36.

There being no dates of maturity on such warrants, each of said national banks sued defendant to restrain it from paying subsequent warrants before their warrants were paid. Defendant's answers alleged set-off and estoppel, which replies denied.

The actions were tried together, and the court found for defendant on the theory of set-off. They are here upon one record, each plaintiff having separately appealed from an order denying its motion for a new trial.

One Malchow was the treasurer of defendant since its organization, and from 1902 to March 12, 1930, he was also the cashier of the Wilder bank, wherein he carried the defendant's checking account. He was the sole managing officer of the Wilder bank and exclusively in charge of its business. He proved faithless to his trust, and the bank was closed as insolvent on March 12, 1930.

Prior to the purchase of the warrants by either plaintiff, Malchow, as treasurer of defendant, received from the treasurer of Jackson county, wherein defendant is situated, checks aggregating $12,918.51, the same being taxes collected by the county. Ordinarily he would have deposited these checks to defendant's account. He did so deposit $5,000 thereof and no more. The balance of $7,918.51 he converted to the use of the Wilder bank. Details are not im-

portant. It is sufficient to say that he stamped the checks paid and returned them to the county without charging the amounts to the county's checking account on the books of the bank and against which account the checks were drawn. The amounts were used to replace in the county's checking account items which Malchow had previously wrongfully taken therefrom to offset bad notes or other items of charge-off. The argument is advanced that the transaction was wholly a matter of book entries and that there was no conversion, for the simple reason that no money was involved since the checks were drawn on the Wilder bank.

We think that argument is fallacious. The checks were good, represented money, and were valuable. They evidenced defendant's right to receive the face value thereof, and had the cashier performed his duty as a banker the defendant would have realized $7,918.51 from the checks, the evidence of this ready credit. Malchow, as treasurer, turned these checks into the hands of the bank, and then as the banker he stamped them paid and returned them to the drawer. The transaction constituted a payment by the county to the defendant. Whether the checks were charged to the account of the county, Malchow by his acts and conduct furnished the county with the evidence that the money had been paid to the defendant and then instead of depositing the money in the bank to the credit of the defendant he handled the checks as stated. By the wrongful manipulation of Malchow as the cashier of the Wilder bank the money readily realizable from the checks was lost to the defendant. It was a misappropriation of the property by Malchow for the benefit of the bank. It was embezzlement. State v. Peterson, 167 Minn. 216, 208 N. W. 761. This misappropriation of these checks before they were deposited to defendant's account was a clear case of larceny, for which the bank's liability followed. The Wilder bank owned these warrants, but when plaintiffs purchased them the indebtedness arising out of the conversion remained unpaid and was a legal set-off available to the defendant as a defense to the collection of the warrants.

■ Perhaps the case should have a broader consideration. From September 1, 1922, to March 12, 1930, Malchow wrongfully with-

drew from defendant's checking account in the Wilder bank $28,332.64, the major portion of which was withdrawn prior to August 28, 1928. There was credited back to this account $8,960.23, the source of which does not appear, leaving a net wrongful withdrawal in this item of $19,372.41. He also withdrew for the purported purpose of paying warrants, but which was wrongfully used for other purposes, the sum of $23,804.14. This was also mostly incurred prior to August 28, 1928. The total wrongful misapplication of defendant's funds amounts to $43,176.55. Substantially all of this arises out of the misuse of fiduciary or trust funds. Through Malchow and from the records of the Wilder bank, it was charged with knowledge that such funds were trust funds; that they were wrongfully used and that substantially all thereof were in fact used for and in its behalf; and that it in fact received the benefit of substantially all thereof. The Wilder bank with such knowledge participated in Malchow's breach of fiduciary obligation, which results in liability. Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 229 N. W. 90; Solway State Bank v. School Dist. No. 26, 179 Minn. 423, 229 N. W. 568; Berg v. Union State Bank, 179 Minn. 191, 229 N. W. 102; Agard v. Peoples Nat. Bank, 169 Minn. 438, 211 N. W. 825, 50 A. L. R. 629.

The character and purpose of Malchow's manipulation cannot be obliterated by the argument that the whole thing was merely a matter of book entries and that such wrongful book entries could not affect the relation of debtor and creditor existing between the Wilder bank and defendant. Of course a depositor's money, when deposited, becomes the money of the bank. But one cannot escape the consequences of his transactions by the mere use of credits in modern business and banking transactions instead of handling currency or cash. The effect is the same. Defendant's money disappeared, and the Wilder bank through Malchow got it. The bank participated in Malchow's misconduct. Under the circumstances, on this theory of the case, an equitable set-off was available to the defendant at the time when plaintiffs purchased their warrants. Solway State Bank v. School Dist. No. 26, 179 Minn. 423, 229 N. W. 568, and cases cited above.

This case is distinguished from Independent School Dist. No. 21 v. Integrity Mut. Cas. Co. 171 Minn. 376, 214 N. W. 258, by the fact that in that case there was no embezzlement, while here there was. This case is also distinguished from First Nat. Bank v. School Dist. No. 272, 177 Minn. 30, 224 N. W. 251, in that the court in that case found the facts against the claim of equitable set-off; but in the instant case the court found the facts in support of the claim of equitable set-off. This case is also distinguishable from the case of Solway State Bank v. School Dist. No. 26, 170 Minn. 83, 212 N. W. 25, in that it did not there appear that the unfaithful official was acting for the bank in a temporary theft of certain warrants. In the instant case the Wilder bank with knowledge received the fruits of the larceny. But when the Solway case was here the second time, 179 Minn. 423, 229 N. W. 568, upon an amended answer as suggested in the first appeal, it was made to appear that the wrongdoer checked the money to the bank to pay his personal debts, and, the bank being charged with his knowledge, the court sustained the claim of equitable set-off. We are unable now to see why this case is not controlled by the doctrine of the second Solway case.

The warrants being non-negotiable (Kalman v. County of Grant, 167 Minn. 458, 209 N. W. 638; First Nat. Bank v. School Dist. No. 15, 173 Minn. 383, 217 N. W. 366, 56 A. L. R. 1369) the defense of set-off, which was available against plaintiffs' assignor at the time they purchased their warrants, is still available against the plaintiffs though they bought the warrants for value and in good faith. This results from a rule of law which we cannot change but which we obey. If it would be better that such warrants be negotiable, thereby making them readily salable in the market to the advantage of the drawer and at the same time attractive to investors, that is a legislative matter.

Both orders are affirmed.

AFTER REARGUMENT.

On January 29, 1932, the following opinion was filed:

PER CURIAM.

Reargument was granted, and counsel for each side have presented additional oral arguments and briefs.

We refer to the school district as defendant.

■ It is argued that G. S. 1923 (2 Mason, 1927) § 9166, permits set-off of claims against intermediate holders only where such claims arose and matured after the one claiming such set-off had notice or knowledge of the intermediate holder's ownership of the obligation sued upon and before he had notice or knowledge of its subsequent assignment. We do not so construe the statute. The claim against the intermediate holder must have accrued before the one claiming the set-off had notice or knowledge that the intermediate holder had assigned the obligation sued upon to a subsequent holder; but it is not required that the one claiming the set-off shall have notice or knowledge of the intermediate holder's ownership of the obligation sued upon before the right to set-off accrued.

If the Wilder bank had brought suit against the defendant to recover on these warrants while it held them, the defendant would have had the right to counterclaim or set off any matured obligation owing to it by the Wilder bank at that time, whether such obligation arose before or after the Wilder bank became the holder of the warrants, and whether or not the defendant had any prior notice or knowledge of the ownership of the warrants by the Wilder bank. The statute extends this right of set-off.

Under the statute, the assignee of a chose in action, not a negotiable instrument, takes it subject to all defenses and equities which the obligor has against the assignor or a prior holder before such obligor has notice or knowledge of any assignment thereof. We have so construed the statute. Linn v. Rugg, 19 Minn. 145 (181); Martin v. Pillsbury, 23 Minn. 175; LaDue v. First Nat. Bank, 31 Minn. 33, 16 N. W. 426, 428; Tuttle v. Wilson, 33 Minn. 422, 23 N. W. 864; Way v. Colyer, 54 Minn. 14, 55 N. W. 744; Nordsell v. Neilsen, 150 Minn. 224, 184 N. W. 1023; Solway State Bank

v. School Dist. No. 26, 170 Minn. 83, 212 N. W. 25, and 179 Minn. 423, 229 N. W. 568.

As said in Martin v. Pillsbury, 23 Minn. 175, 176:

"As respects his right to interpose a set-off or other defence, the effect of the statute is that, until he has notice of the assignment, the defendant occupies the same position as if the thing in action assigned was still held by the assignor."

In LaDue v. First Nat. Bank, 31 Minn. 33, 37, 16 N. W. 426, it is said:

"A set-off arising out of an independent transaction against an intermediate holder is thus placed on the same footing as an equity attaching to the bill or note itself against the original payee."

In Cardozo v. Fawcett, 158 Minn. 57, 61, 196 N. W. 809, 811:

"Not being negotiable instruments, they [the warrants] were notice to a purchaser that he took no better title than his vendor possessed."

■ It is claimed that defendant had only a deposit account in the Wilder bank; that such account did not mature before there was demand for payment; and, as no demand for payment had been made, that such account could not be used as a set-off. There are two answers to this claim:

First, in the prior opinion we held that the Wilder bank converted to its own use $7,918.51 of defendant's money and funds. This was before the Wilder bank acquired the warrants. We have no doubt as to the correctness of that holding. This gave rise to an immediate matured liability of the Wilder bank to this defendant, existing before plaintiffs purchased the warrants.

In the second place, the Wilder bank failed on March 12, 1930, then owing the defendant some $43,000. Upon failure of the bank, its deposit liabilities matured, and no demand was then or thereafter necessary. Notice that plaintiffs had purchased and held these warrants was not given or acquired by defendant until more than a month after March 12, 1930. In that situation, defendant's deposit account in the bank was available as a set-off. Laybourn v.

Seymour, 53 Minn. 105, 54 N. W. 941, 39 A. S. R. 579; St. Paul & M. T. Co. v. Leck, 57 Minn. 87, 58 N. W. 826, 47 A. S. R. 576; Wunderlich v. Merchants Nat. Bank, 109 Minn. 468, 124 N. W. 223, 27 L.R.A.(N.S.) 811, 134 A. S. R. 788, 18 Ann. Cas. 212.

■ It is urged that these warrants were not due at the time they were transferred and have not even yet matured. These so-called warrants are simply orders signed by the president and clerk or secretary of the school board of the district, directing the treasurer to pay to the payee named therein a stated sum of money for teachers' wages or other named indebtedness of the district. They are payable on demand and are due and payable when presented to the treasurer for payment. All of them were so presented before the Wilder bank acquired them and were matured and past due when acquired by that bank. The fact that under our statutes the treasurer, if he has no funds of the district on hand wherewith to pay them, shall then mark them not paid for want of funds and that thereupon they shall become outstanding interest-bearing obligations of the district does not extend the maturity or due date of the warrants, but makes them past due interest-bearing obligations of the district. The fact that the warrants bear the treasurer's indorsement that they have been presented for payment and not paid for want of funds is in itself notice that the warrants are past due.

■ It is said that set-off requires the aid of a court of equity and that defendant does not come into court with clean hands and should be estopped and denied the right to set-off. This claim is based on the following facts: G. S. 1923 (1 Mason, 1927) § 2833, requires the treasurer to make an annual report showing all receipts and disbursements made, accompanied by his vouchers. The school board is required to examine such report and, if approved, shall, by resolution entered on its minutes, approve the same. Mr. Malchow, the treasurer, made such reports in July, 1928, and 1929, reporting all these warrants paid, but did not accompany the reports with the paid orders as vouchers. His fellow members of the school board did not require him to produce the vouchers. The clerk of the district testified that he inquired at the bank of Mr. Malchow,

at times, as to what money the district had on hand, and that Malchow reported amounts which agreed with his report to the board, which showed these warrants paid.

Mr. Malchow's dual capacity as managing officer of the Wilder bank and as treasurer of the school district is of some importance. For all practical purposes he was the bank, but he was not the school district nor its managing officer. The warrant, present in argument as typical of all the warrants, was issued to one A. C. Christenson April 2, 1928, for teacher's wages. On the same day Christenson presented the warrant to Malchow at the bank for payment, indorsed the warrant, and received payment thereof in a credit for the amount in his checking account in the bank. Malchow had funds in his hands at that time, which should have been in the deposit account in the bank to the credit of the school district, amounting to much more than needed to pay the warrant. There is nothing to show that Christenson intended to or did sell the warrant to the bank. What was done with the warrant after he presented it, or what entries were thereafter made by Malchow on the books of the bank, were not Christenson's acts. All that Malchow, as treasurer of the school district, had authority to do and should have done at the time was to pay the warrant. He had no authority to indorse the warrant not paid for want of funds or to transfer it to the Wilder bank. Giving Christenson credit in his checking account instead of cash was not important. All that was necessary then was to charge the account of the school district the same amount as payment of the warrant. It does not appear that any charge was made on the books of the bank against the school district on that day, but on June 30, 1928, before making his report to the school district, this and other orders presented were charged to the school district as paid. The warrant mentioned was at that time in the hands of the Wilder bank and the charge so made paid it, if not already paid. The same record appears as to the report in 1929. At that time the Wilder bank had already transferred the warrants, but defendant was not informed thereof. The Wilder bank did not obtain good title to these warrants, and its assignees, the plaintiffs, stand in its shoes and have no better title.

That aside, we do not find that defendant is estopped or should be denied the right of set-off in equity.

■ It is claimed that the cases of First Nat. Bank v. School Dist. No. 15, 173 Minn. 383, 217 N. W. 366, 56 A. L. R. 1369, and First Nat. Bank v. School Dist. No. 272, 177 Minn. 30, 224 N. W. 251, should control this case; that these warrants should be held to be in a class by themselves; that the statute (§ 9166) does not apply to them; and further that the present action is not one to recover on the warrants, hence they cannot avail as a set-off.

It has been said that warrants of this kind are sui generis, in that they do not impose absolute liability on the district until presented for payment, and presentment for payment is required before the treasurer is authorized to pay them. To which we may add that if, when presented for payment, the treasurer has no funds with which to pay them and they are so marked by him, they then become interest-bearing obligations which cannot be enforced until funds are available. But we know of only two classes of written obligations for the payment of money, negotiable and non-negotiable instruments, under the law. All of our decisions class these warrants as non-negotiable instruments, and, as such, they are subject to defenses and set-off as provided by § 9166, even against good faith purchasers.

■ These actions seek to enjoin the defendant from paying subsequent warrants issued or to be issued by it before paying those held by plaintiffs. That is but an indirect method of recovering on the warrants. As defendant has valid set-offs more than sufficient to cover, plaintiffs cannot prevail.

■ Warrants of this and similar kind are very generally dealt in by banks and others as interest-bearing investments, and it is said that great hardship will result to banks and investors by our decision. But the legislature passed § 9166 in early days, and it has remained the law. That these warrants are not negotiable instruments and come within § 9166 was established by our decisions in early times. That holding has ever since been consistently adhered to. There should be no lack of knowledge on the part of banks and investors as to what the law is in this regard. Means

of ascertaining the facts before investing, in non-negotiable choses in action are generally not lacking. At the present time we have inexpensive and prompt telephone service to every town and hamlet in the state and to most farm and city homes. The clerk of the school district is the keeper of its records. An inquiry of him should disclose the conditions as to warrants outstanding. Other sources of prompt information may be available.

We find no reason for departing from our former opinion.

WILSON, C. J. and HOLT and HILTON, JJ. took no part on reargument.