## In re WOODS & MALONE.

### (District Court, S. D. Georgia, E. D. March 16, 1903.)

1. BANKRUPTCY—FUNDS—IMPLIED TRUST.

Where cotton was by mistake delivered to factors to whom it was not consigned, and by mistake of a warehouseman it was sold, and the proceeds deposited in bank to the factors' account, and subsequently, on bankruptcy of the factors, a balance greater than the amount of the cotton passed from the bank to the bankrupt estate, the owner of the cotton was entitled to the value thereof.

W. W. Gordon, Jr., for intervener.
Walter G. Charlton, for trustee.

SPEER, District Judge. This is a petition to review the finding of Honorable A. H. MacDonell, referee in bankruptcy, on the intervention of J. L. Oswald in the matter of Woods & Malone, bankrupts. From the evidence it appears that the intervener, J. L. Oswald, in the month of October, 1901, shipped from Johnson's Landing, S. C., to Savannah, Ga., one bale of cotton, marked, "J.L.O./J.A." This was consigned to the firm of W. W. Gordon & Co., Savannah. Upon the arrival of the cotton, by some mistake it was delivered to Woods & Malone, now bankrupt. It is also clear that Woods & Malone, who are cotton factors, had no right, title, or interest in the bale of cotton, and, indeed, placed it on their "suspense account," from which it is understood that its disposition was delayed in order to find the true owner. By the mistake of a warehouseman, the particular bale of cotton was sold to Le Hardy & Co. for $31.89, and the proceeds were deposited in the Merchants' National Bank to the general account of

Woods & Malone. The intervener prays that the court pass an order directing the trustee to deliver to him his cotton, or to pay its value—the sum of $31.89. It is also in evidence that, up to the time of their failure, Woods & Malone always had in bank, and in all the banks with which they dealt, a balance greater than the claim of intervener, and a sum greater than this in cash was taken over by the receiver of the bankrupts' estate on his appointment. The balance thus received was accounted for by the receiver, and was transferred by the receiver to his account as trustee. Upon these facts the referee found that the intervener was entitled to be paid the proceeds of his cotton, and this finding has been certified for review.

There are a vast number of precedents which have relation to the question before the court. The case principally relied on by the learned counsel for the trustee is In re Richard, 104 Fed. 792. This was a decision by the Honorable District Court of the Eastern District of Tennessee, and is to the effect that:

"Money held by a bankrupt as guardian, which he had mingled with his own funds, thereby lost its identity as a trust fund; and the bankrupt cannot withhold property or its proceeds from his trustee on the ground that it was purchased with money of his wards, but the wards in such case are merely creditors, who must share with the general creditors in the distribution of the estate."

The argument is that, if a fiduciary claim of such dignity as that of a ward against the guardian must be aligned with that of creditors generally, a fortiori must the claim of a shipper whose cotton has been disposed of by a bankrupt factor possess no stronger equity. It is to be observed, however, in the case cited, it was a question between the bankrupt and the trustee. The wards were not before the court, and the ruling as to their rights, therefore, must be regarded as obiter. It has, moreover, been expressly held that the obligation of a factor, while of a fiduciary nature, is not within the meaning of the special trust defined by the bankruptcy law. Chapman v. Forsyth, 2 How. 202, 11 L. Ed. 236; Hennequin v. Clews, 111 U. S. 676, 4 Sup. Ct. 576, 28 L. Ed. 565.

The question here does not depend upon the priority of a debt due from a special trustee, like a guardian, executor, or administrator, to the cestui que trust. The intervention is an appeal to the equitable powers of the court to trace the values inhering in an implied trust which results from the fact that Woods & Malone by mistake took and disposed of cotton of a shipper who was not their customer—consigned to factors other than themselves. On this subject we are of the opinion that the Supreme Court of the United States has established a principle for the equitable enforcement of implied trusts of this character much more than sufficient to recover for the intervener the proceeds of his cotton bale. The leading case is that of National Bank v. Insurance Co., 104 U. S. 68, 26 L. Ed. 693. That was a case in which the bank itself was held liable for a balance due by one of its depositors—an insurance agent—to the company he represented, and which was entitled to the beneficial ownership in its deposits. In that case, however, the bank was made aware that the chief business of its depositor was his insurance agency. Many cases were cited by

Mr. Justice Mathews, for the court, in the unanimous opinion. From Knatchbull v. Hallett, In re Hallett's Estate, 13 Ch. D. 696, the principle was deduced—

"That if money held by a person in a fiduciary character, though not as trustee, has been paid by him to his account at his banker's, the person for whom he held the money can follow it, and has a charge on the balance in the banker's hands, although it was mixed with his own moneys. * * * The master of the rolls, Sir George Jessel, showed that the modern doctrine of equity, as regards property disposed of by persons in a fiduciary position, is that, whether the disposition of it be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them; if they cannot be identified by reason of the trust money being mingled with that of the trustee, then the cestui que trust' is entitled to a charge upon the new investment to the extent of the trust money traceable into it; that there is no distinction between an express trustee and an agent, or bailee, or collector of rents, or anybody else in a fiduciary position; and that there is no difference between investments in the purchase of lands, or chattels, or bonds, or loans, or moneys deposited in a bank account."

The doctrine of Lord Ellenborough that this principle does not apply when the subject is turned into money and confounded in a general mass of the same description is repudiated, for, said the learned master of the rolls:

"Equity will follow the money, even if put into a bag or undistinguishable mass, by taking out the same quantity. And the doctrine that money has no earmark must be taken as subject to the application of this rule."

The Supreme Court cites this and many similar cases with approval, and also qualifies them by observing:

"This doctrine of equity is modern only in the sense of its being a consistent and logical extension of a principle originating in the very idea of trusts, for they can only be preserved by a strict enforcement of the rule that forbids one holding a trust relation from making private use of trust property. It has been repeatedly recognized and enforced in this court."

And on page 70, 104 U. S., 26 L. Ed. 693, they cite several of their own cases.

A later case (that of The Union Stockyard v. Gillespie, reported in 137 U. S. 413, 11 Sup. Ct. 122, 34 L. Ed. 724) is even more forcible in its clear applicability. This was a case where a factor who dealt in cattle had made deposits with a bank, and, by overdrafts and the like, had imparted knowledge to the bank that he was operating largely on the values intrusted to him by his customers. In conclusion, the Supreme Court declares:

"The circumstances surrounding the deposits, and the relations between the depositor and the bank, were such as to impart notice to the bank that the beneficial ownership was outside of the legal title. With that notice, it had no right to appropriate the deposits to pay the obligations of a depositor to the bank, but it was properly adjudged liable in a suit in equity, and in that alone, to the claims of the beneficial owner."

How much stronger than that case is the case at bar in favor of the beneficial owner! There the factors, the Rappels, had the legal title, and the owner—for the cattle had been intrusted to them—had nothing but his beneficial equity. Here the intervener is not only the beneficial owner, but he has never parted in any manner with his legal title. The possession of the property by Woods & Malone was as-

sumed by mistake. Its proceeds were deposited to their general account, and to allow the trustee to appropriate the balance for the benefit of the general creditors in bankruptcy would be quite as unjustifiable as to permit him to utilize for the same purpose the values belonging to any other person in no way connected with the case which might have drifted into his possession by accident or mistake.

For these reasons, the finding of the referee must be affirmed, and. an order will be taken that the trustee pay to the intervener the proceeds of his bale of cotton.