[File No. 6332.]

MARMARTH SCHOOL DISTRICT NO. 12 of Slope County, North Dakota, a Common School District, Respondent, v. IRA T. HALL, as Receiver of The First National Bank of Marmarth, an Insolvent Banking Corporation, M. E. Johnson, as County Auditor of Slope County, North Dakota, and H. M. Brandenburg, as County Treasurer, of Slope County, North Dakota, Appellant.

(260 N. W. 411.)

510

Opinion filed April 20, 1935.

*Byrne & Reichert* and *W. C. Crawford,* for appellant.

*Theo. Swendseid* and *C. H. Starke,* for respondent.

BURR, J. This is an appeal from an order overruling a demurrer to the complaint.

Hall is the receiver of the First National Bank of Marmarth; Johnson and Brandenburg are now county auditor and county treasurer of Slope county, respectively. The plaintiff borrowed five thousand dollars from the bank, on its certificate of indebtedness payable April 11, 1933. Prior thereto the county treasurer "as custodian of the sinking funds of the plaintiff" made deposits in the bank aggregating over $6,300, and three certificates of deposit were issued therefor. The money is still due from the bank, which is now insolvent. The complaint states: "That the county treasurer of said Slope County is now setting aside and retaining in a special fund all tax collections made for the plaintiff excepting those for sinking funds and interest funds, for the purpose of retiring such certificate of indebtedness owned by Ira T. Hall as receiver as aforesaid, when sufficient funds in said special fund shall have accumulated to retire such certificate of indebtedness with interest."

The receiver of the bank presented the certificate of indebtedness to the county treasurer "and requested priority as to payment from tax collections made for the plaintiff therein.".

The plaintiff alleges it is entitled to an offset against said certificate

of indebtedness in the amount due on this sinking fund deposit, and to the extent of the certificate of indebtedness. The demand for offset was refused by the receiver, and, while the bank furnished a depository bond to secure the payment of the sinking funds the sureties on the bond "are judgment proof and will make no effort to reimburse this plaintiff for the loss of said sinking fund deposit and a judgment against such sureties will be unavailing and worthless." The bank "is insolvent to such an extent that the dividends and payments that may be allowed on claims filed against it will not pay such claims in full but that there will be a substantial loss on such claims by such claim holders, the extent of such loss now being impossible to estimate." It is alleged the county auditor and the county treasurer will pay to the receiver the taxes collected to retire the certificate of indebtedness unless restrained by the court; that the plaintiff is "without any adquate remedy at law and is entirely remediless without the equitable interposition of the courts for the reason that if payment of said certificate of indebtedness is made" without allowing this off set the plaintiff will "be deprived of its right to offset the amount owing by it on its said certificate of indebtedness to said insolvent bank against an equal amount of its sinking funds in said bank and so will lose its said sinking funds, or at least a substantial part thereof."

One of the certificates of deposit shows that the "county treasurer has deposited in the First National Bank of Marmarth $4,709.20 (4,709 dollars and 29 cents) payable to the order of Slope County Treas. (a/c Marmarth Schl. Dist. Skg. funds) in current funds," etc. The others are of the same tenor.

The county treasurer and the county auditor made no appearance. An injunctional order was issued preventing the receiver from disposing of the certificate of indebtedness, restraining him from collecting the amount due on the certificate of indebtedness, and restraining the county officials from paying any tax collections upon the indebtedness.

The receiver urges "that there is a defect of parties defendant; that the complaint does not state facts sufficient to constitute a cause of action."

Appellant says "The contention of the defendant is:

"That funds held by M. E. Johnson are a trust fund for the benefit of the bond holders.

"That since said C. D.'s are issued in the name of M. E. Johnson, Slope County Treasurer, (he was treasurer at that time) it is not a debt that is mutual and owing in the same capacity or right.

"That the money borrowed by the School District from the First National Bank of Marmarth is not a subsisting debt which is mutual and due in the same capacity as the sinking fund held for the benefit of bond holders and in the name of the County Treasurer of Slope County.

"The debts are not due in the same capacity or right and are not mutual between the parties."

Chapter 196 of the Session Laws of 1927 provides: ". . . the County Treasurer or Treasurer of a municipality shall not disburse any of such funds contrary to the provision of this act even though so directed by such governing body and provided further, that the County Treasurer, or Treasurer of the municipality, may disburse such funds for the purpose of paying the principal and interest on either of the bonds for which said fund was created without any authorization therefor by the governing body. The sinking fund of each bond issue shall be kept separate and shall be designated by name indicative of the issue of bonds on account of which it was created." (§ 20.)

Subdivision 4 of said section provides: "Money shall not be withdrawn from a sinking fund and appropriated to any purpose whatsoever other than the purpose for which the fund was instituted until that purpose has been accomplished except as authorized by this section."

In § 23 of said Chapter we find: "Any treasurer who shall pay over moneys raised for the retirement of bonded debts and obligations or for the payment of interest on bonded debt obligations for any purpose except for the payment of principal and interest on the bonded debt for which the fund was created shall be deemed guilty of embezzlement and any member of the governing board or clerk of a municipality who shall be a party to the issuance of a warrant drawn on any sinking fund or interest fund for any purpose except for the purpose for which the fund was created shall be deemed guilty of misdemeanor."

A penalty is provided as follows: "Any treasurer who shall make payment of any amount out of the borrowed money fund for any purpose for which the fund was raised except by transfer to the sinking

fund established for the debt obligation shall be deemed guilty of a misdemeanor. Any clerk of the municipality or member of the governing board of the municipality who shall be a party to such diversion, or attempted diversion, shall be deemed guilty of a misdemeanor." (§ 24.)

Appellant urges that plaintiff cannot be permitted to divert this sinking fund to payment on the indebtedness represented by the certificate of indebtedness. But this is not an attempt on the part of the school district to pay its debt by means of the diversion of the sinking fund to that purpose, even though the practical effect, temporarily, may appear to be such. This is not a case where the school district is being sued by the holder of a certificate of indebtedness and seeks to pay the same by the diversion of a fund. It is not an action at law. It is an action in equity, brought by the school district for the purpose of conserving the sinking fund and to save what the school district can out of the wreckage of the bank. It is true that the money on deposit in the bank is a trust fund, so far as the plaintiff, the bond holders, and the county officials are concerned. It is being collected for a certain specific purpose and must be devoted to that purpose and that purpose only. But so far as the bank is concerned the deposit is a general deposit. When the money was deposited in the bank and the C. D.'s were issued the money became the money of the bank, the same as any other general deposit of money. The money could be used by the bank for any purpose which it saw fit. The bank did not become the trustee of the fund, even though it knew that this money was a part of the sinking fund—and it did know this because the C. D.'s so said. Nevertheless, so far as the bank is concerned it is not a trustee for the bond holders or any one else. Campion v. Graceville, 181 Minn. 446, 232 N. W. 917; Paul v. Draper, 158 Mo. 197, 59 S. W. 77, 81 Am. St. Rep. 296; Gray v. Elliott, 36 Wyo. 361, 255 P. 593, 53 A.L.R. 554. See also Officer v. Officer, 120 Iowa, 389, 94 N. W. 947, 98 Am. St. Rep. 365. See note in 53 A.L.R. 564. Since the money deposited became the money of the bank—not being a special deposit—the relationship between the school district and the bank is merely that of creditor and debtor. Shuman v. Citizens State Bank, 27 N. D. 599, 604, 147 N. W. 388, L.R.A.

1915A, 728. Hence it was not necessary for the bond holders to be made parties to this action.

It is the duty of the plaintiff district to conserve its sinking fund. It levies taxes to pay the certificate of indebtedness and to create the sinking fund. Were the school to pay its certificate of indebtedness and the bank then take that money and pay the C. D.'s to the county treasurer the debts would be off-set to the extent of the amount paid. That would be the practical effect. Under present circumstances this cannot be done. The bank wants its certificate of indebtedness paid and at the same time requires the plaintiff to take its chances on a dividend.

Under the statute the holder of a certificate of indebtedness upon its maturity, may take it to the county auditor and have the treasurer apply thereon the taxes levied by the school district. (See § 2079b5 Supplement.) But the county treasurer is also official depositor of the sinking fund, though the school district and its bond holders are the real parties interested in the sinking fund. The county treasurer is merely the medium through which this transaction is conducted, undoubtedly to prevent any possibility of school districts being derelict in their duty. Hence it is clear that all the equities are in favor of the school district.

Has the school district the right to retain from the taxes which it has levied to pay its certificates of indebtedness a sufficient sum to insure the integrity of the sinking fund deposited with the bank?

While it is a general rule regarding set-off that equity follows the law (Edelman v. Schwartz, 178 N. Y. S. 587; Pratt v. Corns, 214 Mich. 390, 183 N. W. 71) yet the equitable remedy of set-off exists independent of statute (Strong v. Gordon, 203 Mo. App. 470, 221 S. W. 770), and equity goes beyond the law controlling set-off when a departure is necessary to prevent wrong and injustice. Beecher v. Peter A. Vogt Mfg. Co. 227 N. Y. 468, 125 N. E. 831. The power will be exercised to promote substantial justice and rests largely in the sound discretion of the court. Ford v. Stevens Motor Car Co. 209 Mo. App. 144, 232 S. W. 222.

As said in Andrew v. American Sav. Bank & T. Co. 217 Iowa, 657, 251 N. W. 48, "right of offset is a creature of equity." It "is applied independently of limitations which attach to legal or statutory off-set."

Andrew v. Dundee Sav. Bank, 216 Iowa, 240, 249 N. W. 154, 93 A.L.R. 1156. This right does not run with the debt but depends upon the situation existing when the action is brought. Hartford Nat. Bank & T. Co. v. Riverside Trust Co. 117 Conn. 276, 167 A. 811.

The insolvency of a party against whom set-off is sought may be a sufficient ground for a court of equity to allow a set-off which is not provided for by statute. Clark Implement Co. v. Wallace, 103 Neb. 26, 170 N. W. 171; Scrivner v. McClelland, 75 Okla. 239, 182 P. 503; Watts v. Gibson (Tex. Civ. App.) 33 S. W. (2d) 777; Hahn v. Gates, 102 Ill. App. 385.

Equity will allow a set-off of mutual accounts against an insolvent party, when the claim of one asserting the right of set-off has matured, it being immaterial that the claim against him has not matured. Gerseta Corp. v. Equitable Trust Co. 241 N. Y. 418, 150 N. E. 501, 43 A.L.R. 1320.

Appellant says there is no mutuality of account. Equity will take cognizance of a cross claim between litigants, though wanting in mutuality, and set off one against the other, whenever it becomes necessary in order to effect a clear equity or prevent irremediable injustice. City Invest. Co. v. Pringle, 73 Cal. App. 782, 239 P. 302; Porter v. Roseman, 165 Ind. 255, 74 N. E. 1105, 112 Am. St. Rep. 222, 6 Ann. Cas. 718; Berger v. Clendinnen, 88 Md. 151, 40 A. 705.

The doctrine of mutuality of accounts has a different application in equity cases than it has in legal. While mutuality of accounts is necessary in law yet this theory of necessity of mutuality as a basis of set-off is not binding on courts of equity, and equity will take cognizance of cross claims between litigants though wanting in mutuality, and offset the same if necessary to effect clear equity or prevent irremediable injustice. Cooper v. Fidelity Trust Co. 132 Me. 260, 170 A. 726, 729.

While in some jurisdictions it is the rule that to permit set-off claims must grow out of the same transaction, nevertheless it is held in Heflin v. Heflin, 222 Ala. 662, 134 So. 20, that equity will permit a set-off as at law though the set-off grows out of an independent transaction. Indeed equity is not shown to be concerned with the origin of the claim. It is held in Johnson v. Grimm, 209 Iowa, 1050, 229 N. W. 716, that in proceedings in courts of equity both recoupment and set-off

may be applied. In First Nat. Bank v. Consolidated School Dist. 184 Minn. 635, 238 N. W. 634, 240 N. W. 662, an action was brought by the bank against a school district to recover on school warrants issued by the school district. It appears the tax funds had been deposited in the bank and that they were embezzled by the bank cashier who was also the school treasurer. The court held that the school district, when paying these warrants, was entitled to a legal set-off for the tax embezzled. It is not shown that the taxes deposited were for any special purpose. They were collected for the general fund of the school district; but they were a general deposit. The court did not consider that this was the payment of a debt by set-off; though in effect it amounted to this. The case was before them on the broad principle that the cashier of the bank misused the fiduciary or trust funds; the bank knew this and participated in the misconduct which resulted in liability. The court says (238 N. W. 635) "under the circumstances, on this theory of the case, an equitable set-off was available to the defendant at the time when plaintiffs purchased their warrants."

When we brush aside any claim which the bank makes to represent the bond holders we find that the real relationship is between the school district and the bank. The former owes the certificate of indebtedness to the bank. The latter owes to the school district the amount due on the certificates of deposit, even though they were issued in the name of the county treasurer. The certificates show the bank knew the funds were the funds of the school district. Even though strictly speaking and as a matter of law a set-off were not to be permitted in such a case as this, nevertheless there are many instances in which the concurrent jurisdiction of the court of equity is exercised "because the legal remedy is inadequate, or because, through the imperfection of the procedure at law, a legal remedy would be wholly insufficient, if not impracticable." 1 Pom. Eq. Jur. 4th ed. § 189. In Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 34 L. ed. 724, 11 S. Ct. 118, where a factor had deposited in his own name money collected as proceeds of sales for his principal in a bank that knew this fact, it was held, a principal may maintain a bill against the bank to recover the money which had been applied on a debt due from the factor. In such case the remedy for the principal against the bank was not one

at law, the title to the money being equitable rather than legal. See also Fidelity & D. Co. v. Rankin, 33 Okla. 12, 124 P. 73; Boyle v. Northwestern Nat. Bank, 125 Wis. 508, 103 N. W. 1123, 1127, 104 N. W. 917, 1 L.R.A.(N.S.) 1110, 110 Am. St. Rep. 844. The equitable owner of moneys in a bank, in another's name, may sue the bank in equity therefor. Fidelity & D. Co. v. Fidelity Trust Co. (C. C.) 143 F. 152, 160; Re Woods & Malone (D. C.) 121 F. 599, 601, 9 Am. Bankr. Rep. 615. In San Diego County, v. California Nat. Bank (C. C.) 52 F. 59, 62, the county was permitted to recover from the receiver deposits by its treasurer marked "special." In Essex County v. Newark City Nat. Bank, 48 N. J. Eq. 51, 21 A. 185, a party was allowed to recover in equity from a bank a sum of money deposited by a former county collector in his own name. As Pomeroy says, some of the most important instances are "suits to procure or compel a set-off which is not admissible or possible under the practice at law." This statement has support in adjudicated cases. In Farris & McCurdy v. Houston, 78 Ala. 250, 257, it is said: ". . . when a cross demand, rightfully held, can not be made available by suit at law, and yet, ex aequo et bono, ought to be received as payment, chancery, in the exercise of its restraining powers, will intervene, and compel the one having this legal advantage to do justice. Cases of insolvency furnish illustrations of this rule. Demands purely legal are often thus liquidated, one by the other." The syllabus says: ". . . At law, a debt due from the plaintiff, to the defendant as administrator, is not available as a set-off against an individual debt, the debts not being due in the same right; nor is it available as a set-off in equity, if the plaintiff is solvent and sui juris, so that a personal judgment against him would be effective; but, if the plaintiff is insolvent, or is a married woman, against whom a personal judgment can not be rendered, a court of equity will set off the two demands against the other." See also Fleming v. Stansell, 13 Tex. Civ. App. 558, 36 S. W. 504; Delavel Separator Co. v. Sharpless, 134 Iowa, 28, 111 N. W. 438. In this case the court said (111 N. W. 439): ". . . if Sharpless were to be allowed to enforce his judgment, plaintiff would be in the position of being compelled to pay this judgment, although Sharpless is indebted to it in amount in excess of the judgment in his

favor. That a court of equity will furnish relief by way of decreeing an equitable set-off in such cases is well settled."

In Johnson v. Aberdeen, 147 Wash. 482, 266 P. 707, it is held that "generally, depositor in bank which thereafter becomes insolvent may set off his deposit against any indebtedness of his own to the bank." Here the city treasurer had deposited funds of the city in his own name—some on general deposit, some on time deposit, and some on demand certificate. When the bank became insolvent it held current expense fund warrants of the city, and in a suit against the city by the supervisor of insolvent banks the city was permitted to off-set the account. There it was argued that as all the funds deposited with the bank were not funds which the city had collected for the payment of the warrants held by the bank the city could not set off its claim for want of mutuality, except as to the "extent that the money held by the bank was payable on current expense fund warrants." The court said however, (266 P. 710): "We cannot think this a matter of concern to the bank, or to its successor in interest. As between the bank and the city the demands were mutual. It may be that the city had wrongfully commingled the funds, but this, while it may have changed the form of the obligation due from the city to the payees of the special funds, in no way affected the relations between the bank and the city. The bank's obligation was to repay the money to the city, or to pay it to such persons as the city should direct, and no rule of law or principle of equity will permit it to plead the city's dereliction of duty to another to escape the obligation. To say that it is not liable to the city for this reason is to say that it itself owed the duty to pay the money to the cestuis que trustent of the city, but the obligation it assumed when it became the city's depositary does not go to this extent. It is fully protected when it returns the money to the city." In general, see also Maryland Casualty Co. v. Grays Harbor County, 159 Wash. 356, 293 P. 441, where the principle is again upheld.

In Leonard v. Taylor, 183 Ark. 933, 39 S. W. (2d) 704, the state of Arkansas had become obligated to pay the outstanding indebtedness on a road improvement project known as Improvement No. 6, and had issued warrants to the contractor, which warrants were pledged to the American Trust Company to secure the repayment of a loan made to the contractor. The trust company was also the depositary of the

state and when it failed was indebted as such depositary in a sum exceeding $600,000.00. The state allowed the claim for moneys due on the road improvement, ordered payment and the state auditor issued his warrant to the trust company, now insolvent, and to the contractor. The state treasurer refused to pay the amount represented by the warrant issued for the road improvement, but offered to credit the amount on the state's claim against the bank as its depositary. In this action brought by the State Bank Commissioner against the State Treasurer the court permitted the set-off. It held that as the state was indebted to the bank on the improvement warrants, and as the bank was indebted to the state on the general deposit the accounts were mutual and entitled the state to set off its deposit against the same.

"The law respects form less than substance;" "no one should suffer by the act of another;" "no one can take advantage of his own wrong;" and, "for every wrong there is a remedy." (Comp. Laws 1913, §§ 7262, 7254, 7251, 7257) are maxims of our jurisprudence yet in force and effect.

We are satisfied that a court of equity has the right to require the set-off desired by the plaintiff, under the facts as stated, which facts are assumed to be correct because of the demurrer.

It may not be out of place however, to indicate that the county officers—required to pay the C. D.'s and also to hold the sinking fund of the plaintiff in trust for the bond holders—should be required by the court to set aside the amount set off and maintain it as the sinking fund. Thus there would be no diversion of the sinking fund, the holder of the sinking fund would have no cause for complaint, the bond holders would be protected to the extent of the amount credited on the certificate of indebtedness—it being evident from the complaint that there would still be a balance due from the bank on the amount deposited. As to this balance the plaintiff would be relegated to its claim for a dividend, at least so far as this complaint indicates. The judgment is affirmed.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.