**BILLINGS COUNTY, N. D., v. FEDERAL DEPOSIT INS. CORPORATION.**

Civil Action No. 561.

District Court, D. North Dakota, S. W. D.

Jan. 24, 1947.

Supplemental Opinion March 7, 1947.

Mackoff, Kellogg & Muggli, of Dickinson, N. D., and Conmy & Conmy, of Fargo, N. D., for plaintiff.

James M. Kane, Sol., Federal Deposit Insurance Corp., and John L. Cecil, Counsel for Federal Deposit Insurance Corp., both of Chicago, Ill., and Herbert G. Nilles, of the firm of Nilles, Oehlert & Nilles, of Fargo, N.D., for defendant.

VOGEL, District Judge.

The plaintiff herein is a municipal corporation or political subdivision of the State of North Dakota. Included in the stipulation of facts filed by the parties, there is the following: "That the Court shall decide this action as though the county treasurer of Billings County had signed the claim filed by the county against the defendant, and as though the county treasurer was also a party plaintiff, in addition to Billings County.")

The defendant is a corporation created by the United States, the purpose of which was to insure the deposits of all banks which are entitled to the benefits of insurance under the law. Its creation, powers and limitations are contained in 12 U.S.C.A. § 264. In accordance with the provisions thereof, the defendant insured the deposits of the Stockmen's State Bank of Medora, North Dakota, which bank became insolvent, was closed and taken over for liquidation by the defendant on September 24, 1938.

This case involves the following accounts representing moneys on deposit in the Stockmen's State Bank of Medora at the time of its closing:

General open account, subject to check entitled "Treasurer Billings County" .............. $4,306.72

Draft No. 34736, purchased by Billings County from the Bank and in transit at the date of closing of the bank .......... $2,030.00

Certificate of Deposit No. 2080, deposited by "Billings County Treasurer" ................ $3,500.00

Certificate of Deposit No. 2081, deposited by "Billings County Treasurer" ................. $3,231.38

Certificate of Deposit No. 2104, deposited by "Billings County Treasurer" ................. $4,200.00

Certificate of Deposit No. 2087, deposited by "Billings Co. Treas. Custodian" ........... $4,362.76

Certificate of Deposit No. 2111, deposited by "Billings Co. Treas. Custodian" ........... $4,378.54

Subsequent to the closing, dispute arose between the plaintiff and the defendant as to the plaintiff's right to recover under the provisions of 12 U.S.C.A. § 264, for the various deposits set forth above. Subsequently thereto, the defendant paid to the plaintiff an admitted deposit insurance liability of $5,000 (the maximum liability of the defendant for each insured deposit), with the understanding and agreement that the plaintiff was free to pursue the instant action herein in an attempt to establish the existence of two separately insured deposits.

It is the contention of the plaintiff that deposits represented by the five certificates of deposit numbered 2080, 2081, 2104, 2087 and 2111, were deposited by the plaintiff in a separate right and capacity from the deposit in the general checking account and the deposit claim based upon the outstanding draft in transit, and that accordingly the defendant owes an additional liability on the total of such certificates of deposit in the amount of an additional $5,000.

It is the contention of the defendant that all of the above-enumerated deposits were maintained in the Stockmen's State Bank of Medora by the county or its treasurer in the same capacity and the same right and that to the county's total deposits of $26,-009.40 there should be applied the limitation of $5,000 maximum deposit insurance, as prescribed by 12 U.S.C.A. § 264, and that accordingly it owes no additional liability to the plaintiff.

The case is presented on a stipulation of facts, the deposition of the Billings County treasurer, admitted exhibits, and the pleadings of the parties. Oral argument was waived and the position of the respective parties is set forth in their various briefs.

The treasurer of Billings County, under the law of the State of North Dakota, is the custodian of all of the county's general funds and also the custodian of various sinking funds created for the payment of bonds of taxing districts within the county, such as school districts, villages, townships, etc., including the county itself as a taxing district. As treasurer, he maintained checking accounts in the Stockmen's State Bank of Medora and the Bank of North Dakota in Bismarck. All funds which came into his hands were deposited by him in one or the other of these two general checking accounts.

In 1921, Billings County, as a taxing district, issued certain bonds, being obligations of Billings County. Tax assessments which were earmarked to pay such bonds were received by the county treasurer in his capacity as custodian and deposited by him in one or the other of the two general checking accounts. Thereafter, he would purchase certificates of deposit from the Stockmen's State Bank of Medora for amounts representing the moneys collected by him for the purpose of refunding the 1921 bond issue. In such manner he attempted to separate the moneys to be used for the refunding of the bonds from other funds of the county. As the certificates of deposit became due, he would have them renewed by the Stockmen's State Bank of Medora, so that as of the time of the closing of the bank the five certificates of deposit above enumerated represented money set aside and earmarked as money to be used by the county for refunding or paying the 1921 bond issue as such bonds became due and payable, and the amount in the general checking account represented other or general funds of Billings County.

Chapter 21 of the North Dakota Revised Code of 1943 provides the purposes for and the manner in which municipalities may borrow money, issue bonds and raise funds in payment thereof. A county, such as the plaintiff, is a municipality within the meaning thereof. After setting forth the methods and limitations of borrowing money, issuing bonds and raising the funds with which to pay such bonds, the chapter provides as follows:

"21-0340. *Sinking Funds; Custodian Of.* The county treasurer shall be custodian of each sinking fund for the payment of bonds issued by each taxing district within the county * * *."

"21-0341. *Sinking Funds; Duty of County Treasurer. When the county treasurer is custodian of any sinking fund,* he shall not remit to the treasurer of the taxing district any taxes levied for the purpose of paying the interest on or retiring the principal of bonds issued, but *he shall re-*

*tain the same in a separate special fund maintained as a sinking and interest fund for the bonds of such taxing district. \* \* \*"* (Emphasis supplied.)

*"21-0342. Sinking Fund; Sources and Uses.* The sinking fund shall be disbursed by the county treasurer or treasurer of the municipality, as the case may be, upon the directions therefor by resolution of the governing body of the municipality issuing such bonds. As such bonds mature, the county treasurer, upon warrant drawn upon him by the county auditor, shall apply such sinking fund in retirement thereof, and also in payment of the interest thereon as it becomes payable. The county auditor shall draw such warrants so as to pay the interest and retire the bonds at as early a date as possible. *The county treasurer or treasurer of the municipality shall not disburse any of such fund contrary to the provisions of this chapter, even though so directed by such governing body.* The county treasurer or treasurer of the municipality may disburse such fund for the purpose of paying the principal and interest, or either, of the bonds for which such fund was created without any authorization therefor by the governing body. *The sinking fund of each bond issue shall be kept separate and shall be designated by a name indicative of the issue of bonds on account of which it was* created. \* \* \*" (Emphasis supplied.)

*"21-0344. Sinking Fund; Use for Unauthorized Purpose. Money shall not be withdrawn from a sinking fund and appropriated to any purpose other than the purpose for which the fund was instituted until that purpose has been accomplished, except as authorized by sections 21-0342, 21-0343* (investment of sinking funds), *21-0344, and 21-0345."* (Emphasis supplied.)

*"21-0345. Sinking Fund; Surplus Placed in General Fund.* Any surplus in a sinking fund after all of the bonds for the payment of which the fund was created have been paid and canceled and after all investments of the second and third class finally have been disposed of or realized upon, shall be placed in the general fund of the municipal treasury."

A county is a "municipality" within the purview of the foregoing statutes. Section 21-0301, North Dakota Revised Code of 1943. It will be noted from Section 21-0341, supra, that when the county treasurer is custodian of any sinking fund "he shall retain the same in a separate special fund maintained as a sinking and interest fund for the bonds of such taxing district."

The record indicates that it was the practice to first deposit such funds in the general checking account, comingling them with other moneys of the county. Such practice is questionable under the statute but does not lessen the existence of the fact. Thereafter the treasurer did do what was contemplated by Section 21-0341, by drawing a check on the general checking account and purchasing certificates of deposit, thereby retaining the same "in a separate fund." His testimony is to the effect that each time he purchased a certificate of deposit he advised the cashier of the bank that the moneys with which he purchased the certificates of deposit "belonged to the interest and sinking fund for the bond issue of 1921 Funding Bonds," and was "to be held in the sinking fund." No record of the bank so indicates, with the possible exceptions only as to certificates No. 2087 and No. 2111, which state on the certificates that they were deposited by "Billings Co. Treas. *Custodian.*" The first three enumerated certificates indicate merely that they were deposited by "Billings County Treasurer". The certificates are themselves records of the bank, having been made by the bank's officer and having been issued by the bank.

12 U.S.C.A. § 264 (c) (13) provides as follows:

"(13) The term 'insured deposit' means the net amount due to any deposit or deposits in an insured bank (after deducting offsets) less any part thereof which is in excess of $5,000. Such net amount shall be determined according to such regulations as the board of directors may prescribe, and in determining the amount due to any deposit or there shall be added together all deposits in the bank maintained in *the same capacity and the same right* for his benefit either in his own name or in the names

of others, except trust funds which shall be insured as provided in paragraph (9) of subsection (h) of this section." (Emphasis supplied.)

One of the purposes of this section was to make a separate insured deposit of an account maintained by a depositor in a different capacity and a different right from that in which such depositor maintained some other account. Were that not true, the statute would have provided that the amount due any depositor should be determined by adding together all deposits maintained in the bank by such depositor. Here the statute specifically says that the amount due shall be determined by adding together "all deposits in the bank maintained in the same capacity and the same right."

Defendant contends, as stated, that all of the deposits made by Billings County or its treasurer, or its treasurer as custodian, represented by the foregoing enumerated deposits, were made "in the same capacity and the same right," and accordingly having paid $5,000 to the plaintiff, its liability is at an end. The defendant relies greatly upon the North Dakota case of Marmarth School District No. 12 of Slope County v. Hall et al., 1935, 65 N.D. 509, 260 N.W. 411. That case held that a bank, acting as a depository of a sinking fund of which a county treasurer was the custodian and which sinking fund belonged to a school district or political subdivision or taxing entity within the county, was not a trustee of the fund so deposited, that the money deposited became the money of the bank even though certificates of time deposit were issued therefor, and that the fact that the sinking funds of the school district were deposited in the bank in the name of the county treasurer did not alter the relationship between the school district and its depository nor change the character of the funds. The decision does hold that the treasurer, as custodian, was acting as trustee of the school district's funds. The fact that the bank was held not to be a trustee and that so far as the bank was concerned the deposit was a general deposit is, it seems to me, beside the point. In the instant case, it is the Billings County treas-

urer who is impressed with the characterization of trustee, and we are here concerned with the capacity and the right with which *he* maintained the various deposits of Billings County and whether he complied with the law of North Dakota, which specifically provides that he should keep and maintain the funds in question in a separate special fund which could not be withdrawn or appropriated to any purpose other than the purpose for which the fund was instituted until that purpose had been accomplished. Section 21-0344, supra.

In the instant case, we have seven separate deposits. The first two, namely, the open checking account and the draft which was in transit on the date of the closing of the bank, constitute, for the purpose of Title 12 U.S.C.A. § 264 (c) (13), deposits made in the same capacity and the same right. The five certificates of deposit, representing moneys collected and held in a sinking fund for the purpose of paying the 1921 bond issue, were not held by the treasurer in the same capacity and the same right as the first two mentioned deposits. Money in the open checking account and presumably the money represented by the draft in transit represented general funds of the county, unearmarked for any specific purpose, and which was subject to withdrawal by the county through its duly authorized representatives for any legitimate, legal county purpose. The five certificates of deposit represented earmarked money deposited specifically for one purpose only, namely, the refunding of the 1921 bonds. The two deposits were not made or maintained in the same capacity and the same right.

Plaintiff relies in main upon the case of Federal Deposit Ins. Corporation v. Casady, Town Treasurer, et al., 10 Cir., 1939, 106 F.2d 784. In that case, the treasurer of the town of Cheyenne, Oklahoma, carried five separate and distinct deposits in a bank, such deposits at all times designated and appearing on the bank's books as separate deposits, as follows: City of Cheyenne Sinking Fund, City of Cheyenne Paving Fund, Firemen's Pension Fund, City of Cheyenne Meter Fund, Cheyenne General Fund. It was contended by the Federal Deposit Insurance Corporation that the

deposits in each one of the aforementioned accounts were made by the treasurer "in the same capacity and the same right," and that accordingly the insurance liability was limited to $5,000. In a holding adverse to such contention, the Tenth Circuit Court of Appeals stated, page 786:

"A city or town holds the legal title to the sinking fund in trust for the bondholders and judgment creditors."

Page 787:

"Each of such deposits created for a separate and distinct purpose, and each carried in the bank as separate from the others, was held in a separate right and capacity.

"Statutory provision has been made for investment of sinking funds.

"Sinking funds must go into the ultimate payment and liquidation of the bonds and judgments, and not be otherwise used."

Counsel for the defendant herein attempts to distinguish that case from the facts at bar by pointing out that the certificates of deposit in the instant case were issued upon deposits made by the county and were payable either to the county or its treasurer and that on no place on the bank's records was recorded any deposit as a special account for the benefit of anyone else, and that in the Casady case the accounts were carried in the name of the specific funds to which the moneys belonged. The distinction is not so great as to make the law of that case inapplicable herein when consideration is given to the fact that the bank was notified at the time of the purchase of the certificates of the purpose thereof and it was the bank's duty to make its own records showing that intent or purpose. Even if that should not be true and in the event that the oral notice could be deemed insufficient, the last two enumerated certificates carry the bank's notation that they were deposited by "Billings Co. Treas. Custodian" as distinguished from "Billings County Treasurer," and the total of such two certificates exceeds the sum of $5,000.

Much has been said by both parties with reference to the ownership of the moneys on deposit in the Stockmen's State Bank. Counsel for the defendant direct attention to Title 12 U.S.C.A. § 264 (m) (3) as follows:

"Except as otherwise prescribed by the board of directors, neither the Corporation nor such new bank or other insured bank shall be required to recognize as the owner of any portion of a deposit appearing on the records of the closed bank under a name other than that of the claimant, any person whose name or interest as such owner is not disclosed on the records of such closed bank as part owner of said deposit, if such recognition would increase the aggregate amount of the insured deposits in such closed bank."

The Board of Directors of the F.D.I.C., on July 1, 1938, adopted a resolution set

---

[1] "Whereas, It appears that in many sections of the United States several independent political subdivisions have a common treasurer or custodian of their funds; and

"Whereas, There exists a practice whereby such common treasurer or custodian deposits the funds separately owned by the several political subdivisions in one account in an insured bank without designating the name or the interest of the several separate political entities; the interest of such entities being disclosed only on the books maintained by public officials; and

"Whereas, Pursuant to subsection (m) (3), upon the closing of an insured bank, the several political entities are not recognized as owner of any portion of such an account maintained under circumstances related above except as otherwise prescribed by the Board of Directors; and

"Whereas, If the insured banks were required to maintain separate accounts for each separate political subdivision it would result in a great inconvenience to the banks and the said public officials; and

"Whereas, The Corporation has been requested to prescribe that any political subdivision should be recognized as an insured depositor, where in fact and in law, it is the owner of a portion of an account maintained by public officials, without being required to cause to be maintained in a bank a detailed record showing the extent of its interest; therefore, be it

"Resolved, The Division of Liquidation is hereby directed to recognize the owner of any portion of a deposit appearing

forth in footnote No. 1.[1]. Thereafter, the following regulation was adopted:

"§ 330.3 Deposits of public officers. The owner of any portion of a deposit appearing on the records of a closed bank under the name of a public official, state, county, city, or other political subdivision will be recognized for all purposes of claim for insured deposits to the same extent as if his name and interest were disclosed on the records of the bank: Provided, That the interest of such owner in the deposit is disclosed on the records maintained by such public official, state, county, city or other political subdivision, And, provided further, That such records have been maintained in good faith and in the regular course of business."

As counsel for the defendant point out, the regulation has reference to a situation where there would be a number of municipalities or entities which have a common treasurer who must have deposited in a comingled single account in an insured bank all of the funds from this number of independent, separate municipalities and that situation does not here exist. In the instant case, all of the funds, including those contained in the open checking account, that represented by the draft in transit, and by the five certificates of deposit, were owned by the plaintiff, Billings County. Under the law of North Dakota, as above set forth, certain of these funds, namely, those which were impressed with the obligation to redeem or refund the 1921 bonds, were to be set aside by the county treasurer as custodian solely for that purpose and could be used for no other purpose. In effect, and as held by the Supreme Court of North Dakota in the Marmarth case, supra, the treasurer of Billings County was trustee of such funds for the benefit of the bondholders. That is a relationship existing between the treasurer and the bondholders and not between the plaintiff and the defendant or the treasurer and the defendant. In the event of a loss of such funds, Billings County would not be relieved of its obligation to pay the bonds. Title 12 U.S.C.A. § 264 (m) (3), supra, the regulation above set forth and the resolution quoted in footnote 1 are inapplicable to the instant situation. We are concerned solely herein with the question of whether or not the plaintiff, through its treasurer, made all of the deposits in the Stockmen's State Bank "in the same capacity and the same right". The money represented by the certificates of deposit was held by the treasurer with the legal obligation to "maintain" it separately in his "capacity" as trustee for the benefit of the bondholders and the "right" to pay out only for the purpose of redeeming the bonds. This is a different capacity and a different right from which the treasurer maintained the general checking account representing general funds of the county unimpressed with a separate specific statutory obligation as to use. The general open checking account was maintained by the treasurer in his capacity as custodian of all of the funds of Billings County. The certificates of deposit were maintained by the treasurer in his capacity as custodian of funds raised by Billings County as a taxing district for the benefit of the bondholders and impressed with the statutory limitation that such could be used only to refund the bonds and that they must be kept "in a separate special fund" for that purpose.

This Court is accordingly of the opinion that the total of the certificates of deposit represents a deposit by the Billings County treasurer as custodian in a different capacity and in a different right from that with which he maintained the general deposit in the open checking account, and that the defendant owes an additional insured liability of $5,000 thereon.

Counsel for plaintiff are directed to prepare findings and order consistent with the foregoing. Copies of the same shall be served upon counsel for defendant, who shall have ten days subsequent to the date

on the records of a closed bank under the name of a public official, state, county, city or other political subdivision as an insured depositor; provided, the interest of such owner in said deposit is disclosed on the records maintained by such public official, state, county, city or other political subdivision; and provided further, that such records have been maintained in good faith and in the regular course of business."

of such service within which to make objections thereto.

## Supplemental Opinion

The question for determination is the right of the plaintiff to recover interest on its claim and the ordinary costs of suit against the Federal Deposit Insurance Corporation, defendant. The latter is a corporate agency of the government, created to insure deposits in banks entitled to coverage. It relies upon its status as a governmental agency in protesting the assessment of interest and costs and seeks to have imputed to it the sovereign's immunity to such charges.

Plaintiff relies in main on the decision of the Supreme Court of the United States in Reconstruction Finance Corporation v. J. G. Menihan Corp., et al., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595, wherein the court of last resort held that the Reconstruction Finance Corporation was subject to an assessment of "costs and allowances" in an unsuccessfully prosecuted suit brought by it. The latter is a governmental agency of the same general classification as the defendant in the instant case. Certiorari had been granted because of a conflict of decisions. In that case, the Court said, as to the Reconstruction Finance Corporation, 312 U.S. at page 83, 61 S.Ct. at page 486:

"There is nothing in the statutes governing its transactions which suggests any intention of Congress that in suing and being sued the Corporation should not be subject to the ordinary incident of unsuccessful litigation in being liable for the costs which might properly be awarded against a private party in a similar case."

And 312 U.S. at page 85, 61 S.Ct. at page 487:

"We perceive no reason for holding that petitioner may avail itself of the judicial process in accordance with the authority conferred upon it and escape the usual incidents of that process in case its assertions of right prove to be unfounded. On the contrary, we think that the unqualified authority to sue and be sued placed petitioner upon an equal footing with private parties as to the usual incidents of suits in relation to the payment of costs and allowances."

■ Defendant attempts to take the instant case outside of the ruling of the Supreme Court in the Reconstruction Finance Corp. v. Menihan decision by directing attention to the fact that in that case the governmental agency was the moving party and brought the suit, and that in the instant case the F.D.I.C. was the defendant and was dragged into court willy-nilly. I can see no distinction. The fact that the governmental agency seeking the sovereign's immunity from costs and interest is plaintiff or defendant should not and logically cannot be the determining factor as to whether or not such immunity should be extended.

The Federal Deposit Insurance Corporation is a creature of Congress and has been delegated with Congressional authority to "sue and be sued". The right to "sue and be sued" is unabridged and unqualified. The governmental agency then possesses not only the prerogative of being able to forcefully have its wrongs righted in the courts, but it has specifically been made the subject of such enforcement when the shoe is on the other foot and private citizens seek the redress of wrong. Costs of a suit and interest on an unpaid claim rightfully owed is an ordinary incident of litigation and in the absence of specific statutory direction does not depend on the identity of the party seeking the righting of a wrong, but is a natural consequence of the failure of a party to perform his legal obligation. The governmental agency involved is such a party. If Congress had determined that the sovereign's immunity to costs should have been extended to its corporate agency, it would have so provided. The statutes are silent in this respect.

■ Defendant's counsel also relies upon subsection (l) (6) of Section 264, Title 12 U.S.C.A., the applicable portion of which reads as follows:

"Provided, That the Corporation, in its discretion, may require proof of claims to be filed before paying the insured deposits, and that in any case where the Corporation is not satisfied as to the validity of a claim for an insured deposit, it may require the

final determination of a court of competent jurisdiction before paying such claim."

The theory of defendant's counsel apparently is that because of such provision and the corporation being, in good faith, not satisfied as to its legal liability respecting the payment of the instant claim, it had the right to allow the matter to rest until determined by the courts and accordingly should not be forced to pay interest for the interim period between the creation of the alleged liability, namely, the closing of the bank, and the court's determination as to such liability. The quoted provision has no application to such a situation. Congress, in passing the quoted provision, had in mind the validity of the depositor's claim against the closed institution. Such provision has nothing whatsoever to do with the legal liability of the Federal Deposit Insurance Corporation on its statutory obligation to pay depositors of insured banks.

If we were dealing here with the legality of the plaintiff's deposit as against the closed bank and there had arisen reasonable question as to the validity of such deposit, and if the Federal Deposit Insurance Corporation, before recognizing the claim, had insisted on the final determination of a court of competent jurisdiction of the question of legality respecting the deposit, then this Court, in the exercise of its discretionary power, might very properly refuse to charge the Federal Deposit Insurance Corporation with interest up to the time of a court's determination of the legality of the deposit. It is such situations that Congress had in mind in specifically stating that the Federal Deposit Insurance Corporation might "require the final determination of a court of competent jurisdiction before paying such claim." We are not here dealing with a like situation. The quoted portion of the statute has no application because our question in the main case is solely concerned with the liability of the defendant for the payment of an additional insuring liability on what was claimed by the plaintiff to be a deposit made in a separate capacity and separate right. The legality of the deposit itself was in no way questioned. That being true, the plaintiff is entitled to both interest and costs. It will be so ordered.

